696 So.2d 1031 (1997)
Charles Ray SANDERS, et al.
v.
ASHLAND OIL, INC., et al.
No. 96 CA 1751.
Court of Appeal of Louisiana, First Circuit.
June 20, 1997.
*1033 Patrick Hufft, New Orleans, for Plaintiff/Appellee Charles Ray Sanders.
Richard J. Petre, Jr., Lafayette, for Defendant/Appellee Roy Eschette.
Henry L. Terhoeve, Baton Rouge, for Defendants/Appellants Roy Eschette, Protech Environmental Services, Inc., Aetna Life and Casualty Company, and Aetna Casualty and Surety Company.
Aub A. Ward, Baton Rouge, for Plaintiff/Appellee Bobbie O. Bickford.
Francis Touchet, Livingston, for Defendant/Appellee Roy Eschette d/b/a Protech Environmental.
Vincent Fornias, Baton Rouge, for Defendant/Appellee Alvin Fairburn & Associates, Inc.
Larry Canada, Michael Johnson, New Orleans, for Defendant/Appellee Continental Casualty Company.
Robert T. Meyers, New Orleans, for Defendant/Appellee Agricultural Excess and Surplus Insurance Company.
Stephen Elliott, Jeffrey K. Warwick, Metairie, for Defendant/Appellee Asbestos Consulting Services, Inc.
T. Howard Leach, III, Metairie, for Defendant/Appellee Intrepid Underwriters, Ltd.
Joseph E. Juban, Baton Rouge, for Defendant/Appellee Southern University, State of Louisiana.
John R. Keogh, Baton Rouge, for Defendants/Appellees Asbestos Design, Inc., Alvin Fairburn & Associates, Alvin Fairburn, Sr.
Louis Galvis, New Orleans, for Defendant/Appellee The Home Depot.
David K. Johnson, Baton Rouge, for Defendant/Appellee Aetna Casualty & Surety Company.
William Kaufman, III, Baton Rouge, for Defendant/Appellee Ribando Electrical Supply, Inc.
Mark Taylor, Metairie, Richard Petre, Lafayette, for Owen Joyner.
Before CARTER, LeBLANC and PARRO, JJ.
CARTER, Judge.
This is an appeal from a trial court judgment, granting a motion for summary judgment.

BACKGROUND
On December 8, 1990, employees of Protech Environmental Services, Inc. (Protech) were performing asbestos abatement services in connection with the renovation of Grandison Hall dormitory at Southern University in Baton Rouge, Louisiana. A fire began in the dormitory where two Protech employees, Charles Ray Sanders and Jesse Wayne Bickford, were removing mastic tile adhesive from the floors. As a result of the fire, Charles Ray Sanders sustained serious injuries, and Jesse Wayne Bickford was killed. The fire also caused substantial damage to the dormitory.
On December 6, 1991, Charles Ray Sanders and Bobbie O. Bickford, individually, as administratrix of the Estate of Jesse Wayne Bickford, and as tutrix of the minor children, Brian Wayne Bickford and Travis Dan Bickford, filed the instant action for personal injuries and punitive damages, under docket number 376,039. Numerous defendants were named in the petition, including the State of Louisiana, through the Office of Risk Management, Division of Administration, *1034 Office of the Governor, and Southern University (the State); Protech; Roy Eschette, President of Protech; and Aetna Life and Casualty Company (Aetna Life), the liability insurer of Protech. Aetna Casualty and Surety Company (Aetna Casualty), the workers' compensation insurer of Protech, subsequently intervened in the action to exercise its right of subrogation.
In a separate action, the State filed suit against Protech and its building loss insurer, Great American Insurance Company (Great American), under docket number 376,088, for property damages sustained to the dormitory. This suit was subsequently settled, and the State entered into a "General Release and Indemnity Agreement" with Protech and Great American for the sum of $10,000.00.
On June 29, 1995, in the action for personal injuries and punitive damages, Eschette, Protech, Aetna Life, and Aetna Casualty (hereafter collectively referred to as Protech) filed a cross-claim and third-party demand against the State. Protech alleged that, under the second paragraph of the "General Release and Indemnity Agreement" executed in the property damage suit, the State agreed to indemnify Protech for any amounts for which it may be cast, together with legal interest and costs. Additionally, Protech alleged that Aetna Casualty had paid substantial sums to defend and protect Eschette and Protech in connection with the claims for which the State agreed to provide indemnity, and, therefore, it was entitled to reimbursement by the State.
The State answered, contending that, in entering into the release and indemnity agreement, the parties intended to settle only those claims arising out of the State's suit for property damage, not claims arising out of the suit for personal injuries and punitive damages.
On September 26, 1995, the State filed a motion for summary judgment on the cross-claim/third-party demand, contending that the release and indemnity agreement did not grant Protech indemnification by the State because the parties to the agreement did not intend for the indemnification to extend to any suit other than the State's suit for property damage. Attached to the motion for summary judgment were four exhibits: (1) the "General Release and Indemnity Agreement;" (2) request for admissions, interrogatories, and request for production of documents to Protech, including exhibits A through E attached thereto; (3) response to the request for admissions, interrogatories, and request for production of documents by Protech; and (4) the transcript of the stipulation to settle between the State and Protech.
On October 23,1995, a hearing was held on the State's motion for summary judgment. At the conclusion of the hearing, the trial court, for oral reasons assigned, granted the motion for summary judgment, dismissing, with prejudice, Protech's contractual indemnity claims against the State and assessing costs to Protech. A judgment was signed on November 16,1995.
Protech appealed, assigning the following specifications of error:
1. The trial court erred in interpreting the agreement contrary to the clear and unambiguous meaning of its terms.
2. The trial court erred in considering parol evidence purporting to show the parties' intent.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Kidd v. Logan M. Killen, Inc., 93-1322, p. 4 (La.App. 1st Cir. 5/20/94); 640 So.2d 616, 618; Jarrell v. Carter, 632 So.2d 321, 323 (La.App. 1st Cir.1993), writ denied, 94-0700 (La.4/29/94); 637 So.2d 467; Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d 1115, 1120 (La.App. 2nd Cir.), writ denied, 587 So.2d 695 (La.1991). The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966; Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d 318, 325 (La.1993); Kidd v. Logan M. Killen, Inc., 640 So.2d at 618-19.
*1035 A fact is material if its existence is essential to the plaintiff's cause of action under the applicable theory of recovery and without which the plaintiff could not prevail. Material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Penalber v. Blount, 550 So.2d 577, 583 (La.1989); Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Miramon v. Woods, 25,850, p. 10 (La.App. 2nd Cir. 6/22/94); 639 So.2d 353, 359; Jarrell v. Carter, 632 So.2d at 323.
The burden is upon the mover for summary judgment to show that no genuine issue of material fact exists, and only when reasonable minds must inevitably conclude that the mover is entitled to judgment as a matter of law is summary judgment warranted. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Robertson v. Our Lady of Lake Regional Medical Center, 574 So.2d 381, 384 (La.App. 1st Cir.1990), writ denied, 573 So.2d 1136 (La.1991). To satisfy this burden, the mover must meet a strict standard by showing that it is quite clear what the truth is and excludes any real doubt as to the existence of material fact. Kidd v. Logan M. Killen, Inc., 640 So.2d at 619; Ouachita National Bank in Monroe v. Gulf States Land & Development, Inc., 579 So.2d at 1120.
The jurisprudence has traditionally held that summary judgments were not favored and should be used cautiously and sparingly. Penalber v. Blount, 550 So.2d at 583; Kidd v. Logan M. Killen, Inc., 640 So.2d at 619. In determining whether material facts had, in fact, been disposed of, any doubt was to be resolved against granting the summary judgment and in favor of trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772, 775 (La.1980). This was true even if grave doubt existed as to a party's ability to establish disputed facts at trial. Equipment, Inc. v. Anderson Petroleum, Inc., 471 So.2d 1068, 1070-71 (La.App. 3rd Cir.1985). Where the trial court was presented with a choice of reasonable inferences to be drawn from the subsidiary facts contained in the affidavits, attached exhibits, and depositions, the reasonable inferences were required to be viewed in the light most favorable to the party opposing the motion. Jones v. Briley, 593 So.2d 391, 393 (La.App. 1st Cir.1991). However, by La. Acts 1996, First Extraordinary Session, No. 9, the legislature amended LSA-C.C.P. art. 966, stating in paragraph A(2) that:
The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends. (Emphasis added.)
LSA-C.C.P. art. 967 provides that an affidavit used in a motion for summary judgment "shall set forth such facts as would be admissible in evidence." Article 967 does not distinguish between objective or subjective facts or between direct or circumstantial evidence. Carter v. BRMAP, 591 So.2d 1184, 1188-89 (La.App. 1st Cir.1991). As a general rule, a motion for summary judgment is rarely appropriate for a determination based on subjective facts such as intent, motive, malice, knowledge, or good faith. Penalber v. Blount, 550 So.2d at 583. Thus, in motions for summary judgment where a contract is ambiguous and the intent of the parties becomes a question of fact, very often there are conflicting affidavits concerning the intent of the parties, and granting a motion for summary judgment is inappropriate. Carter v. BRMAP, 591 So.2d at 1189. However, even though granting a motion for summary judgment based on an intent issue may be rare, it can be done when there is no issue of material fact concerning the pertinent intent. Carter v. BRMAP, 591 So.2d at 1189.
Appellate courts are to review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Potter v. First Federal Savings and Loan Association of Scotlandville, 615 So.2d at 325; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991). Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Sun Belt Constructors, Division MCC Constructors, *1036 Inc. v. T & R Dragline Service, Inc., 527 So.2d 350, 352 (La.App. 5th Cir. 1988). Interpretation of a contract is usually a legal question which can be properly resolved in the framework of a motion for summary judgment. Domingue v. Reliance Insurance Co., 619 So.2d 1220, 1223 (La.App. 3rd Cir.1993); Alford v. Kaiser, 589 So.2d 546, 548 (La.App. 1st Cir.1991), writ denied, 594 So.2d 893 (La.1992).

CONTRACT INTERPRETATION
Generally, legal agreements have the effect of law upon the parties, and, as they bind themselves, they shall be held to a full performance of the obligations flowing therefrom. Belle Pass Terminal, Inc. v. Jolin, Inc., 92-1544, 92-1545, p. 16 (La.App. 1st Cir. 3/11/94); 634 So.2d 466, 479, writ denied, 94-0906 (La.6/17/94); 638 So.2d 1094; Spohrer v. Spohrer, 610 So.2d 849, 851-52 (La.App. 1st Cir.1992). In other words, a contract between the parties is the law between them, and the courts are obligated to give legal effect to such contracts according to the true intent of the parties. LSA-C.C. art.2045; Martin Exploration Company v. Amoco Production Company, 93-0349, p. 4 (La.App. 1st Cir. 5/20/94); 637 So.2d 1202, 1205, writ denied, 94-2003 (La.11/4/94); 644 So.2d 1048; Spohrer v. Spohrer, 610 So.2d at 852. This intent is to be determined by the words of the contract when they are clear, explicit, and lead to no absurd consequences. LSA-C.C. art.2046; Woodrow Wilson Construction Company, Inc. v. MMR-Radon Constructors, Inc., 93-2346, p. 3 (La.App. 1st Cir. 4/8/94); 635 So.2d 758, 759, writ denied, 94-1206 (La.7/1/94); 639 So.2d 1167; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479.
When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. LSA-C.C. art.2046; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479; Stafford v. Jennings-Norwood Farm and Irrigation Company, Inc., 586 So.2d 735, 737 (La.App. 3rd Cir.1991), writ denied, 590 So.2d 590 (La.1992); Investors Associates Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d 909, 912 (La. App. 3rd Cir.), writ denied, 502 So.2d 116 (La.1987). The rules of interpretation establish that, when a clause in a contract is clear and unambiguous, the letter of that clause should not be disregarded under the pretext of pursuing its spirit. LSA-C.C. art.2046, comment (b); Cashio v. Shoriak, 481 So.2d 1013, 1015 (La.1986); Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479; Spohrer v. Spohrer, 610 So.2d at 852.
In such cases, the meaning and intent of the parties to the written contract must be sought within the four corners of the instrument and cannot be explained or contradicted by parol evidence. LSA-C.C. art. 1848; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 479; Investors Associates Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d at 912. Contracts, subject to interpretation from the instrument's four corners without the necessity of extrinsic evidence, are to be interpreted as a matter of law, and the use of extrinsic evidence is proper only where a contract is ambiguous after an examination of the four corners of the agreement. Martin Exploration Company v. Amoco Production Company, 637 So.2d at 1205; Investors Associates Ltd. v. B.F. Trappey's Sons Inc., 500 So.2d at 912.
When the terms of a written contract are susceptible to more than one interpretation, or there is uncertainty or ambiguity as to its provisions, or the intent of the parties cannot be ascertained from the language employed, parol evidence is admissible to clarify the ambiguity or show the intention of the parties. Martin Exploration Company v. Amoco Production Company, 637 So.2d at 1205; Belle Pass Terminal, Inc. v. Jolin, Inc., 634 So.2d at 480. In cases in which the contract is ambiguous, the agreement shall be construed according to the intent of the parties. LSA-C.C. art.2045. Intent is an issue of fact which is to be inferred from all of the surrounding circumstances. Kuswa & Associates, Inc. v. Thibaut Construction Co., Inc., 463 So.2d 1264, 1266 (La.1985); Commercial Bank & Trust Company v. Bank of Louisiana, 487 So.2d 655, 659 (La.App. 5th Cir.1986). A doubtful provision must be interpreted in light of the nature of the contract, equity, usages, the conduct of the parties before and after the *1037 formation of the contract, and other contracts of a like nature between the same parties. LSA-C.C. art.2053; Allen v. Burnett, 530 So.2d 1294, 1301 (La.App. 2nd Cir. 1988).
Whether a contract is ambiguous or not is a question of law. Spohrer v. Spohrer, 610 So.2d at 853; Myers v. Myers, 532 So.2d 490, 494 (La.App. 1st Cir.1988); Aycock v. Allied Enterprises, Inc., 517 So.2d 303, 309 (La.App. 1st Cir.1987), writs denied, 518 So.2d 512, 513 (La.1988). However, where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. See G/O Enterprises, Inc. v. Mid Louisiana Gas Company, 444 So.2d 1279, 1286 (La.App. 4th Cir.), writ denied, 446 So.2d 318 (La.1984); Universal Iron Works, Inc. v. Falgout Refrigeration, Inc., 419 So.2d 1272, 1274 (La.App. 1st Cir. 1982). When appellate review is not premised upon any factual findings made at the trial level, but instead is based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. Spohrer v. Spohrer, 610 So.2d at 853; Conoco, Inc. v. Tenneco, Inc., Tennessee Gas Pipeline Company, 524 So.2d 1305, 1312 (La.App. 3rd Cir.), writ denied, 525 So.2d 1048 (La.1988). In such cases, appellate review of questions of law is simply whether the trial court was legally correct. Spohrer v. Spohrer, 610 So.2d at 853.
In the instant case, the trial court, in oral reasons for judgment, stated, in pertinent part, as follows:
The court finds that [the State] was referring to the suit for building damages, suit number 376,[0]88, when it signed the release indemnity agreement for $10,000.[00]. The court is also of the opinion that Pro-Tech could not possibly believe that the State would release them from a wrongful death [or] a personal injury action for this small amount. The second paragraph clarifies the language in the first paragraph, and this court interprets the language aforesaid to mean the State or Southern University and claims they may have means the State and Southern University. Furthermore, this is the standard release and indemnity agreement, and it's [sic] purpose is to protect Pro-Tech from the claims of those who are subrogated to the rights of the releasor, in this case the State. Clearly, the State did not sign this agreement to protect Pro-Tech from any and all claims made by anyone and everyone. Furthermore, this court feels that had the parties intended to included [sic] the pending personal injury suit 376,039, it would have been referenced. However, there's ample facts, I believe, before this court to render summary judgment....
From these reasons, it is unclear whether the trial court looked only at the four corners of the agreement and found it to be unambiguous or whether he found it to be ambiguous and then reviewed the parol evidence to determine the intent of the parties. Regardless of what the trial court reviewed, the threshold issue on appeal is whether the terms of the agreement are clear and unambiguous. If the language of the agreement is explicit and unambiguous, the contract must be enforced as written. However, if the language of the agreement is unclear and ambiguous, the contract must be construed in light of the intent of the parties.

A. Ambiguity

The "General Release and Indemnity Agreement" at issue in this case provides, in pertinent part, as follows:
That WE, THE STATE OF LOUISIANA THROUGH THE OFFICE OF RISK MANAGEMENT, DIVISION OF ADMINISTRATION, OFFICE OF THE GOVERNOR, AND SOUTHERN UNIVERSITY, for the sole consideration of the sum of $10,000.00, the receipt whereof is hereby acknowledged, do hereby release and forever discharge PRO-TECH ENVIRONMENTAL SERVICES, INC. AND GREAT AMERICAN INSURANCE COMPANY, and any related and/or affiliated company of and from any and all claims or demands of whatsoever kind or nature, including strict liability, for or because of any matter or thing done, omitted or suffered to be done by any officer, agent, employee, successor or assigns of *1038 said parties, prior to and including the day hereof, and particularly on the [sic] account of any and all claims which they may have for personal injuries, smoke damage, cost of clean-up, removal of asbestos, air monitoring services, construction costs, painting, damage to terrazzo floors in Grandison Hall, as a result of a[sic] explosion/fire on December 8, 1990, at Grandison Hall, SOUTHERN UNIVERSITY Campus, Baton Rouge, Louisiana.
We do hereby further agree to indemnify and hold harmless said parties, together with all employees, agents, officers, or assigns thereof of and from any and all further claims and/or punitive damage claims that may be made or asserted by the aforesaid or by anyone because of the aforesaid injuries, damages, loss or expenses suffered as a result of the aforesaid explosion/fire, whether such claim is made by way of indemnity, contribution, subrogation or otherwise.
The foregoing payment is also received in full compromise and settlement of any and all claims that we have or may have against the insurers under any policy of insurance issued to any defendant, whether under the liability, medical payment or any other portion of said policy as a result of the aforesaid accident.
We further recognize that the injuries may be worse than they now appear to be, or may grow worse later, and that we accept this settlement with said knowledge. (Emphasis added.)
The first paragraph of the agreement is a release clause, wherein the State agreed to release Protech and Great American and any related and/or affiliated company from any and all claims resulting from the actions or inactions of Protech or Great American (or any officer, agent, employee, successor, or assign of Protech or Great American), particularly, any and all claims which they (the State) may have for personal injuries, smoke damage, cost of clean-up, removal of asbestos, air monitoring services, construction costs, painting, or damage to terrazzo floors in Grandison Hall, resulting from the December 8,1990 fire.
The second paragraph of the agreement is an indemnity clause, wherein the State agreed to indemnify Protech, Great American, and their employees, agents, officers, or assigns from any and all further claims which may be asserted by the "aforesaid" (the State) or by "anyone" because of the aforesaid injuries, damages, loss or expenses suffered as a result of the "aforesaid" fire.
After carefully reviewing the agreement, we conclude that it is neither explicit nor unambiguous. Initially, we note that the agreement is poorly drafted and that the use of legalese, such as "aforesaid," makes the meaning of the contract terms unclear. The agreement fails to reference the suit which is affected by the agreement and is signed by only one party to the agreement, the State. The indemnity clause utilizes the term "parties," but it fails to specify which "parties" are indemnified, i.e., the parties to the contract or the parties to the lawsuit. Additionally, we find that the indemnity clause, as written, is subject to more than one reasonable interpretation. It could be interpreted to provide indemnity for all claims arising from the fire filed by anyone, including those for personal injuries suffered by the petitioners in the personal injury suit filed against Protech. On the other hand, it could be interpreted to provide indemnity for only those claims listed in paragraph one to which the release was applicable. Because the agreement is neither explicit nor unambiguous, we will review the extrinsic evidence to determine whether the parties intended for the indemnity to extend to claims besides those involved in the State's suit for property damage.

B. Intent

The extrinsic evidence in this case consists of various pleadings, correspondence between counsel for Protech and counsel for the State, and the transcript of a stipulation to settle between the State and Protech.
In answers to a request for admissions propounded by the State, Protech admits that a series of letters exchanged between counsel (its attorney and counsel for the State) constitute the entirety of the settlement *1039 negotiations in suit number 376,088, the property damage suit. A review of those letters reveals that none of the letters discussed suit number 376,039, the suit for personal injuries. A November 23, 1993 letter from Protech's attorney to counsel for the State, states that "[o]ur client contacted us recently and requested that we obtain a reasonable settlement demand from you in hopes that we can close the State of Louisiana versus Pro Tech Environmental portion of this case." The letter then discussed figures relevant to the damage to Grandison Hall. A January 21, 1994 letter from Protech's attorney to the State's counsel states "[w]e confirm our telephone conversation on Wednesday, January 19, 1994 wherein you past [sic] along a settlement demand on behalf of the State of Louisiana as [a] result of its suit against Great American Insurance Company for a total of $32,552.98." On January 27, 1994, Protech's attorney wrote to counsel for the State, indicating as follows:
After reviewing the entire file in this matter, it is apparent that there was no damage to the physical structure itself as a result of the fire since the building had been completely gutted prior to the fire taking place....
Accordingly, we ask that you pass along our settlement offer of $9,500.00, each party to bear its own expenses....
On February 4, 1994, the attorney for Protech wrote to counsel for the State, offering to settle the property damage suit for $10,000.00. Moreover, the exchange of letters resulted in an oral stipulation to settle which was transcribed by the court reporter at the May 26, 1994 deposition of George Bigelow. The stipulation provides as follows:
[Counsel for Protech]:
This is a matter entitled State of Louisiana through the Office of Risk Management versus Pro-Tech and Great American Insurance Company. We were here today for the deposition of the State of Louisiana through its representative George Bigelow.
Prior to the start of the deposition, we had some discussions and are in a position to settle this matter on the following terms and conditions:
Great American Insurance Company and Pro-Tech will pay to the State of Louisiana the total sum of $10,000.[00], each party to bear some expenses, in full and final settlement of this case. (Emphasis added.)
Agreed?
[Counsel for the State]: Agreed.
Based on the foregoing evidence, we conclude that the State showed that there is no genuine issue of material fact concerning the parties' intent that the State provide indemnification only for the claims set forth in suit number 376,088, the suit for property damage. The correspondence and the stipulation show that the settlement would encompass only that part of the case dealing with the State's suit for property damage against Protech. There is nothing to indicate that any other suit was to be included. The agreement does not reference any particular suit, and there is no caption on the agreement. Additionally, in the release portion of the agreement, the State releases Protech, Great American, and their employees, agents, officers, or assigns for the damages it (the State) sustained; there is no reference to anything else. In opposition to the motion for summary judgment, Protech failed to submit any affidavits or other documentation to contradict the State's evidence regarding intent and, thus, failed to raise a genuine issue of material fact as to the intent of the parties. There is not one scintilla of extrinsic evidence to support Protech's position. Therefore, we conclude that the trial court appropriately granted summary judgment in favor of the State.

CONCLUSION
For the foregoing reasons, the judgment of the trial court, granting the State's motion for summary judgment, is affirmed. Appeal costs are assessed against Eschette, Protech, Aetna Life, and Aetna Casualty.
AFFIRMED.
PARRO, J., concurs.