bWHIPPLE, J.
Plaintiff appeals from a trial court judgment, granting the motion for summary judgment filed by defendant, Texas Property *710 and Casualty Insurance Guaranty Association (TIGA). For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY
On August 17, 1987, plaintiff, Cassandra Thompson, was involved in a vehicular accident in Louisiana. As a result of the accident, she filed suit in Louisiana on September 3, 1987, against Lee 0. Morris, a citizen of Texas; Frank Brothers Trucking Company (“Frank Brothers”), a Texas corporation; and the alleged insurer of Frank Brothers. In her petition, plaintiff alleged that she was severely injured when Morris, an employee of Frank Brothers, negligently drove the large truck he was operating across two travel lanes of Louisiana Highway 28 in Rapides Parish, pulling directly into the path of the motorcycle on which plaintiff was a passenger.
By sixth supplemental and amended petition, plaintiff named as an additional defendant Texas Property & Casualty Insurance Guaranty Association (“TIGA”). Plaintiff averred that American Druggists’ Insurance Company (“American Druggists’”) had issued a liability insurance policy to Frank Brothers, which policy had not been can-celled as of August 17, 1987, the date of the accident herein.[1] Plaintiff further alleged that American Druggists’ had been placed into liquidation and that consequently TIGA was legally responsible for plaintiffs claim against the insolvent insurer.
On October 23, 1997, TIGA filed a motion for summary judgment, averring ¡¡¡that (1) American Druggists’ had been placed in liquidation, and all policies of insurance issued by it had been cancelled; (2) a time limit had been set for filing claims against the defunct insurer; and (3) plaintiff was involved in the accident at issue after the cutoff date for filing claims; and (4) plaintiff had not timely filed a claim.
A hearing was conducted on November 17, 1997, and by judgment signed that date, the trial court granted TIGA’s motion for summary judgment, dismissing plaintiffs suit against TIGA with prejudice. From this judgment, plaintiff appeals.
SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97); 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97); 703 So.2d 29. It should only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. LSA-C.C.P. art. 966.
Previously, our cases held that summary judgments were not favored and were to be used cautiously and sparingly. Any doubt was to be resolved against granting the motion and in favor of a trial on the merits. However, in 1996, the legislature amended LSA-C.C.P. art. 966 to overrule the presumption in favor of trial on the merits. Summary judgments are now favored, and the documents submitted by both parties are to be equally scrutinized. Berzas v. OXY USA Inc., 29,835, pp. 4-5 (La.App. 2nd Cir.9/24/97); 699 So.2d 1149, 1152; Hayes v. Autin, 96-287, p. 6 (La.App. 3rd Cir.12/26/96); 685 So.2d 691, 69A,writ denied, 97-0281 (La.3/14/97); 690 So.2d 41.
|4In 1997, by Act No. 483, the legislature again amended LSA-C.C.P. art. 966 to incorporate the federal summary judgment analysis. Under the amended version of LSA-C.C.P. art. 966, the initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. LSA-C.C.P. art. 966(C)(2). If the nonmov-ing party fails to do so, there is no genuine *711 issue of material fact, and summary judgment should be granted. LSA-C.C.P. arts. 966 and 967; Berzas, 29,835 at p. 8; 699 So.2d at 1154.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s determination of whether a summary judgment is appropriate. Sanders, 96-1751 at p. 7; 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether or not a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. Ledet v. Quality Shipyards, Inc., 615 So.2d 990, 992 (La.App. 1st Cir.1993).
DISCUSSION
Plaintiff acknowledges that on August 8, 1986, the 200th Judicial District Court of Travis County, Texas entered an order canceling all policies of American Druggists’ as of May 30, 1986. Nonetheless, plaintiff argues that the policy issued by American Druggists’ to Frank Brothers was never properly cancelled pursuant to federal law, and summary judgment was, thus, inappropriate. Plaintiff asserts that notice of cancellation of the policy at issue was never filed with the Texas Railroad Commission, as required by regulations promulgated by the Interstate Commerce | ¡¡Commission (ICC).[2] Plaintiff further argues that because the federal regulations regarding notice of cancellation of insurance were not followed, the policy was never effectively cancelled and remained in full force and ef-feet. Thus, plaintiff avers, any state law or state court order providing that the policy was cancelled is preempted by federal law.
However, we find it unnecessary to address any issue of federal preemption with regard to the procedure to be followed by an insurer in canceling a policy. Rather, we conclude that regardless of whether the policy had been effectively cancelled pursuant to or as required by regulations promulgated by the ICC and the Texas Railroad Commission, plaintiffs claim was not timely and plaintiff accordingly failed to file a “timely” claim against the defunct insurer. As such, plaintiff may not assert a claim against TIGA.
Section 3 of article 21.28 of the Texas Insurance Code [3] sets forth time limitations for filing a claim against an insolvent insurer where there has been an order of liquidation, rehabilitation or conservation. Section 3(a) provides, in pertinent part, as follows:
IsWhere a liquidation, rehabilitation, or conservation order has been entered in a proceeding against an insurer under this Article, all persons who may have claims against such insurer shall present proof of the same to the receiver at a place specified by him within a period of time to be specified by the court, in no event, however, less than ninety (90) days nor more than one (1) year after the date of the entry of the order specifying such time.
Tex. Ins.Code art. 21.28, § 3(a).
Section 3(b) further allows for late filings, as follows:
*712 Proofs of claims may be filed subsequent to the date specified but in no event later than one (1) year after the entry of the court’s order specifying the time for filing claims. Claims filed subsequent to the date specified in the court’s order, but prior to the expiration of one (1) year after the entry of such order, may participate only in future dividends. Claims which are not filed within the expiration of such one-year period shall not participate in any distribution of the assets by the receiver. (Emphasis added).
Tex. Ins.Code art. 21.28, § 3(b).
In the instant case, it is undisputed that American Druggists’ was placed in liquidation on April 30, 1986, by the Court of Common Pleas of Franklin County, Ohio; that on July 28, 1986, the Commissioner of Insurance of the State of Texas entered an order designating American Druggists’ an impaired insurer; and that on August 8, 1986, the 200th Judicial District Court of Travis County, Texas entered an order setting January 12, 1987, as the date by which all claims of creditors must be presented to the receiver. Plaintiff’s claim did not come into existence until August 17, 1987, the date of the accident. Thus, no claim was filed on her behalf with the receiver of American Druggists’ by the January 12, 1987 deadline or within one year of the court’s order setting forth that deadline, i.e., August 8, 1987.
In Chandler v. Jorge A. Gutierrez, P.C., 906 S.W.2d 195, 197 (Tx. Ct.App.1995), writ denied, the Texas Court of Appeals in Austin was faced with a similar factual scenario, ie., the claimant did not timely file a proof of claim with the receiver, because the claim was unknown and indeed could not have been known puntil after the filing deadline had passed. The court concluded that article 21.28 of the Insurance Code did not provide a remedy for claims of which the claimant had no knowledge prior to the filing deadline, nor did it provide for unknown claims to be filed on a date subsequent to the filing deadline. Chandler, 906 S.W.2d at 200. Noting the need for a degree of finality in liquidation proceedings, the court held that the terms of article 21.28 did not authorize extension of the filing deadline, even for equitable reasons. Chandler, 906 S.W.2d at 201. Thus, the claimant was barred from asserting his claims.
Likewise, in the present case, the fact that plaintiffs claim did not come into existence until after the filing deadline, consequently resulting in an untimely claim, prevents her from asserting a claim against the assets of the defunct insurer.
However, in addition to a claim against the assets of the insolvent insurer, as authorized under article 21.28, a claimant may also have a claim for additional funds pursuant to article 21.28-C, the Texas Property and Casualty Insurance Guaranty Act (“the Guaranty Act”). The Guaranty Act provides funds in addition to the assets of an impaired insurer for the protection of “holders of ‘covered claims.’” Tex. Ins.Code art. 21.28-C, § 2. The Guaranty Act establishes an association (TIGA) of all licensed property and casualty insurers in Texas to maintain a fund financed through assessments against solvent member insurers for the purpose of paying impaired insurers’ obligations for statutorily defined “covered claims.”[4] Tex. Ins.Code, Article 21.28-C, §§ 6, 7, 14; Chandler, 906 S.W.2d at 198.
| «However, the Guaranty Act only applies to covered claims which came into existence within a certain period of time after a determination that an insurer is an “impaired insurer.” Specifically, section 6 of the Guaranty Act provides, in pertinent part, as follows:
This Act shall apply to covered claims existing prior to the determination that an insurer is an impaired insurer and to covered claims arising within thirty (30) days after the determination of impairment, or before the policy expiration date if less than thirty (30) days after the determination of impairment, or before the insured replaces the policy or effects its cancella *713 tion, if he does so within thirty (30) days of the determination of impairment.
American Druggists’ was designated an “impaired insurer,” as defined by Article 21.28-C, Section 5(4), by order dated July 28, 1986. It is undisputed that Cassandra Thompson’s claim, which arose on August 17, 1987, did not exist either prior to American Druggists’ being designated an “impaired insurer” or within thirty days thereafter.
The filing deadlines set forth in article 21.28, as discussed above, also apply to covered claims for additional funds brought pursuant to the Guaranty Act. Chandler, 906 S.W.2d at 199. Thus, because plaintiffs claim did not come into existence within thirty days after the determination of impairment and because her claim was not timely filed pursuant to the provisions of article 21.28, § 3, plaintiff is precluded from pursuing her claim against TIGA.
Based on the foregoing, we conclude that regardless of whether the American Druggists’ policy had been effectively “cancelled” pursuant to the regulations of the ICC and the Texas Railroad Commission, plaintiff is nonetheless precluded as a matter of law from asserting her untimely claim against TIGA Article 21.28 of the Texas Insurance Code establishes procedures for the closing of receivership proceedings. In accord with this purpose, the legislature provided a cutoff date after which a receiver is no longer obligated to accept claims and after |9which TIGA is no longer obligated to pay claims. Chandler, 906 S.W.2d at 200. The ICC regulations relied upon by plaintiff as preempting state law are not in any way related to receivership or liquidation of insurers and have no bearing upon the filing deadlines established for claims against such insolvent insurers. Accordingly, we need not address whether these ICC regulations preempt any state court laws or orders dealing with cancellation of insurance policies of motor carriers engaged in interstate commerce.
CONCLUSION
For the above and foregoing reasons the November 17, 1997 judgment, granting TIGA’s motion for summary judgment and dismissing plaintiffs claims against it with prejudice, is affirmed. Costs of this appeal are assessed against plaintiff, Cassandra Thompson.
AFFIRMED.

. Plaintiff filed six supplemental and amended petitions, naming additional defendants. Several incidental actions were also filed in this matter. However, neither the additional named defendants nor the incidental actions filed herein are relevant to this appeal.

. The ICC promulgated regulations regarding notice of insurance coverage and cancellation of such coverage for motor carriers engaged in interstate commerce, which were set forth in 49 C.F.R. Part 1023 (now repealed). These regulations provided that when a state required a motor carrier to file evidence of liability insurance, the motor carrier could not engage in interstate commerce within the borders of that state until a "certificate of insurance” had been filed with the appropriate commission of that state. 49 C.F.R. § 1023.51. The "certificate of insurance” was required to be in the form set forth in the federal regulations, which form provided that an insurance policy had been issued, "continuing until canceled as provided herein.” 49 C.F.R. § 1023.52; 49 C.F.R. Part 1023 Form E. Furthermore, the regulations provided that an insurer was required to give the state commission notice of the cancellation of motor carrier liability insurance by filing a notice of cancellation (as set forth in the regulations) with the state commission. 49 C.F.R. § 1023.71
Federal courts, in interpreting regulations paralleling these federal regulations, have held that failure to provide the required notice of cancellation results in the maintenance of insurance coverage, at least as to injured third parties. Lewis Machine Co. v. Aztec Lines, Inc., 172 F.2d 746, 750 (7th Cir.1949); White v. Great American Insurance Company of New York, 343 F.Supp. 1112, 1117 (M.D.Ala.1972).

. All provisions of the Texas Insurance Code cited herein are those which were in effect at the time of the accident in question.

. A "covered claim" is defined as "an unpaid claim of an insured or third party liability claimant which arises out of and is within the coverage ... of an insurance policy to which [the Guaranty] Act applies, issued ... by an insurer licensed to do business in this State, if such insurer becomes an ‘impaired insurer ....’” Tex. Ins.Code art. 21.28-C, § 5(B)(2).