L SAUNDERS, Judge.
This cases arises from the execution, by the Plaintiff and the Defendant, of two agricultural leases of property in Catahou-la Parish, Louisiana. The Plaintiff, Louisiana Purchase II Partners (LAP) filed suit alleging that the Defendant, J & E Farm Partnership (J & E) failed to pay the required rent pursuant to the lease agreement. After LAP filed its complaint, J & E filed its Answer and Reconventional Demand, alleging damages for failure of LAP to provide adequate irrigation water to the leased premises and also negligence on the part of LAP. The Plaintiff then filed its Motion for Summary Judgment stating there was no genuine issue of material fact as to the issue of LAP’s responsibility to provide irrigation water to the premises. The trial court found that the lease was clear and unambiguous on this issue, thus the Motion for Summary Judgment was granted and J & E’s Reconventional Demand was subsequently dismissed. At this time, J & E appeals the Summary Judgment granted by the trial court in favor of LAP and dismissal of the Recon-ventional Demand.

FACTS AND PROCEDURAL BACKGROUND

The parties to this action are LAP, whose representatives are Mr. Gerald Keating, partner, and Dr. John Bryant, *606 farm manager, and J & E, whose representative is Jeffery H. Morris, partner. Morris’ father, Ivan 0. Morris Jr., attended negotiations of the leases and provided the labor and management for the 1998 rice crop.
The parties entered into two written leases wherein LAP agreed to lease to J & E 2,945 acres in Catahoula Parish for the 1998 crop year. The terms of each lease were identical except for the acreage and rental amounts. In the lease, LAP agreed to provide all equipment and materials necessary to provide “high quality water less than 500 ppm Sodium from wells watering no more than 150 acres each.” The leases [2were prepared by the Lessor, and their terms had an effective date of February 10, 1998. They were to continue for a period of four years, and provided for two semi-annual rent payments. The consideration for one lease was $108,936.00 and the second lease was $144,372.00. Paragraph 32 of the lease contained the following provision:
Lessor shall be responsible for replacement of equipment in the event of catastrophic damage from natural causes (including but not limited to, fire earthquake, tornado, windstorm, and lightning). The parties expressly acknowledge and agree that in no instance shall Lessor be liable for any crop loss due to equipment failure due to mechanical breakdown, catastrophic damage from natural causes, or underground water quantity or quality.
After the leases were signed, LAP caused to be drilled 24 wells on the leasehold; the first on March 26, 1998, and the last on May 21, 1998. The drillers were given well specifications by LAP to drill each well.
Installment payments under each lease were due June 1, 1998, and December 1, 1998. On June 1, 1998, $54,468.00 became due under the first lease and $72,186.00 became due under the second lease. On December 1, 1998, $54,468.00. became due under the first lease and $72, 186.00 became due under the second lease.
LAP filed suit on February 18, 1999, alleging that J & E failed to pay both of the December 1, 1998 installments due pursuant to the provisions of the two leases. LAP sought $121, 117.00, reasonable attorney fees, and court costs in its petition. On May 21, 1999, J & E filed an Answer listing its affirmative defenses and a Reconventional Demand for damages against LAP, alleging that LAP agreed to provide irrigation water and all irrigation equipment, pumping structures and other materials necessary to provide irrigation water to the leased premises, and that, as a result of LAP’s failure to do so, J & E sustained damages. J & E also alleged that LAP was negligent |,qon numerous grounds, all addressing aspects of LAP’s failure to properly provide the irrigation sufficient to sustain the rice crop. According to J & E, the wells drilled by LAP were not built deep enough to reach the water strata, therefore the wells did not deliver a sufficient amount of water to the crops, resulting in damage. Accordingly, J & E sought damages for costs incurred in mitigating its losses.
LAP filed its first Motion for Summary Judgment on August 30, 1999. LAP asserted that based upon Paragraph 32 of the lease, there was no genuine issue of material fact regarding LAP’s liability for damages because paragraph 32 provided that LAP would not be liable for damages resulting from “failure of the irrigation system.” The court denied the motion on February 28, 2000.
Next, on September 12, 2000, LAP moved for partial summary judgment asserting that LAP had in effect a liability insurance policy which would cover J & *607 E’s claim against it and that the unpaid rent, which by this time had been paid into the court registry by J & E, should be paid to LAP. This motion was also denied by the trial court.
Last, LAP moved for partial summary judgment on June 26, 2001 asserting that there was no warranty by LAP to provide irrigation sufficient to sustain its rice crop. In written reasons, the trial court found the leases devoid of any language wherein LAP agreed to supply irrigation to J & E’s crops; and further, paragraph 32 specifically provided that LAP would not be held responsible for crop damage due to water quantity. The Motion for Summary Judgment was granted and J & E’s Reconven-tional Demand was denied on February 12, 2002.
LAP filed a motion to turn over funds from the court registry and to set attorney fees. J & E objected, asserting that granting summary judgment dismissed |4only the Reconventional Demand and that Plaintiffs petition for past due rent still faced an answer with affirmative defenses not disposed of by the summary judgment. J & E further asserted that additional party Defendants were still party to the action and had not been affected by or referenced in the summary judgment. The objection was overruled, attorney’s fees were fixed at $20,000.00, and the clerk of court was ordered to turn over all funds in the registry to LAP.
Thereafter, J & E filed its petition for suspensive appeal which was granted by this court on April 2, 2002.

LAW AND ANALYSIS

ASSIGNMENTS OF ERROR
On appeal, J & E assert the following assignments of error:
(1) the trial court erred when it granted LAP’s motion for summary judgment and denied J & E’s reconven-tional demand; and
(2) the trial court erred when it granted LAP’s motion to turnover funds and set attorney’s fees.
ANALYSIS

ASSIGNMENT OF ERROR NO. 1

In its first assignment of error, J & E asserts that the trial court erred when it granted LAP’s Motion for Summary Judgment and denied J & E’s Reconventional Demand. LAP asserts that summary judgment was proper because paragraph 32 of the lease, disclaiming any liability for crop loss due to “underground water quantity”, is clear and unambiguous; and additionally, the’ “AS IS” clause of the lease disclaims any liability on the part of LAP for damages attributed to the irrigation wells on the leasehold. This court recognizes that summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together |Bwith affidavits show there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law. La. Code Civ.P. art. 966(B). For the following reasons, we reverse the decision of the trial court granting LAP’s Motion for Summary Judgment. We hold that the paragraph 32 of the lease is not clear and unambiguous and that there still remains a genuine issue of material fact as to whether LAP had a duty to provide irrigation water to J & E’s rice crop,
. Paragraph 82 of the lease agreement
LAP argues that the provisions of paragraph 32 of the lease disclaims LAP from any and all of the allegations made by J & E. This summary judgment was granted, in part, from the trial court’s interpretation of paragraph 32 of the J & E’s lease with LAP that provides as follows:
*608 Lessor shall be responsible for replacement of equipment in the event of catastrophic damage from natural causes (including but not limited to, fire earthquake, tornado, windstorm, and lightning). The parties expressly acknowledge and agree that in no instance shall Lessor be liable for any crop loss due to equipment failure due to mechanical breakdown, catastrophic damage from natural causes, or underground water quantity or quality.
Under La.Civ.Code art.2046, “When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” However, if a contract cannot be construed simply, based on its language, because of an ambiguity, the court may look to extrinsic evidence to determine the parties’ intent. Whether or not a contract is ambiguous is a question of law. Sanders v. Ashland Oil, Inc., 96-1751 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Also, under La.Civ.Code art.2050, the provisions of a contract “must be interpreted in light of other provisions so that each is given the meaning suggested by the contract as a | ¿whole.”
The trial court held that paragraph 32, on its face, clearly and unambiguously excluded the Lessor from liability for failing to supply an adequate amount of water to the rice crop. However, we find that this paragraph is not clear and unambiguous, and could have more than one interpretation. Paragraph 32 of this lease also contains provisions guarding the Lessor from liability from crop loss caused by events beyond of the Lessor’s control. For example, paragraph 32 states “Lessor shall be responsible for replacement equipment in the event of catastrophic damage from natural causes (including but not limited to, fire earthquake, tornado, windstorm, and lightning).” This provision then goes on to discuss crop loss due to water quality or quantity. We hold that this provision could be interpreted to limit liability of the Lessor for negligence; but after a close reading of the provision and interpreted in conjunction with other provisions of the lease, it could also be intended to guard the Lessor against liability only for crop loss caused by insufficient water quantity for reasons beyond the Lessor’s control, such as instances where the land simply does not contain the desired amount of water, but not negligence.
Moreover, the first page of the lease agreement entered into by the parties states that the Lessor rents to the Lessee the property described in Exhibit A to the lease agreement. Exhibit A gives the land description and specifically and clearly sets forth that, “Lessor agrees to provide high quality water less than 500 ppm Sodium from wells watering no more than 150 acres each.” This creates ambiguity, in that one provision of the lease states that the Lessor is not responsible for water quantity, but Exhibit A clearly states that the Lessor intends to supply the crops with water containing less that 500 ppm of Sodium from wells that are intended to water |7no more than 150 acres each.
In light of Exhibit A to the lease, it would be very difficult to conclude that LAP had no obligation whatsoever to supply water to J & E’s rice crop. In any event, clearly, because of the conflict between the terms of the Paragraph 32 and Exhibit A to the lease, it follows that there are issues of material fact to be resolved by the trier of fact at a trial on the merits. Thus, summary judgment based upon the absence of any duty on behalf of LAP to supply water to the leasehold is clearly unwarranted.

*609
“AS IS” clause contained within the lease terms

In its brief, LAP argues that the lease unambiguously states that the Lessee took the irrigation equipment “AS IS”. According to LAP, this provision disclaims liability for any inadequacies in water quantity, and the lease agreement does not “in any way, shape, or form” impose any type of obligation on LAP to do any work on the irrigation system subsequent to the date of execution of the lease. Despite the fact that LAP claims it had no duty to build any irrigation wells, following the lease negotiations, LAP caused 24 wells to be drilled upon the leasehold. LAP claims that it took on the voluminous and expensive task of drilling 24 wells purely “as a gratuity and an act of good faith.” However, J & E asserts that LAP agreed to provide all irrigation equipment pumping structures and other materials necessary and to provide irrigation water to the leased premises.
The pertinent “AS IS” provision of the lease states:
Prior to entering into this lease, Lessee has inspected the subject Irrigation Equipment and agrees to accept the same in its present “AS IS” condition and to undertake and perform the repairs and maintenance required herein.
An “AS IS” clause generally implies that the leasing party has had a reasonable opportunity to inspect for latent defects. However, in this instance, the record reflects |Rthat the irrigation equipment was not installed, nor were all the wells built upon the land until after lease negotiations and inspection. When the parties entered the lease, 10 wells were already drilled on the leasehold. Subsequent to the lease, LAP drilled 24 more wells. Although the “AS IS” clause may be applied to those wells existing at the inception of the lease, it cannot be applied to those wells built after lease negotiations because J & E never had a reasonable opportunity to inspect those wells before accepting the “AS IS” clause.
Furthermore, the conflict of the parties centers around a duty to provide adequate irrigation water to the rice crop. The “AS IS” provision does not address that duty. It only addresses maintenance and repairs to the irrigation equipment existing at the time of the execution of the lease. As such, it cannot support the summary judgment in favor of LAP.

ASSIGNMENT OF ERROR NO. 2:

In J & E’s final assignment of error it asserts that the trial court erred when it granted LAP’s motion to turnover funds and set attorney’s fees. For the reasons above, we hold that summary judgment granted in favor of LAP was improper. Accordingly, turning over funds and setting attorney’s fees is also improper. We hold that the funds are to remain in the court registry and setting attorney’s fees is not yet proper, as each issue in controversy in the case sub judice has not been disposed.

DECREE

For the above reasons, we reverse the judgment of the trial court and reverse the summary judgment granted in favor of LAP, as there still remains a genuine issue of material fact. We also reverse the turnover of funds and amount set for attorney’s fees. All costs of this appeal are attributed to Defendant, LAP.
REVERSED.