THERIOT, J.
12This suit arises from a dispute between siblings over shares of bank stock originally owned by the siblings’ parents. Plaintiff, Byard “Peck” Edwards, Jr. (“Peck”), alleges that his brother, Andrew Edwards (“Andrew”), in his capacity as the executor of their parents’ successions, concealed the existence of the stock and refused to turn the stock over to the rightful owners. The trial court granted summary judgment in favor of Andrew, dismissing Peck’s suit with prejudice. Peck appeals the dismissal of his suit. We affirm.
FACTS AND PROCEDURAL HISTORY
Byard Edwards, Sr., father of Peck and Andrew, died in 1993. His estate included shares of Citizens Bank stock, the naked ownership of which he willed to Peck’s adult children, Ashley and Hawk[1]. The bank stock was subject to successive usufructs in favor of his wife, Neville Reid Edwards, and then Peck, for their lifetimes. In 1995, Peck signed a Joint Petition for Possession in Mr. Edwards’s suc *12 cession and acknowledged his usufructuary interest in the stock.
In 2000, while the bank stock was still subject to the lifetime usufruct in favor of Mrs. Edwards, the IRS sent a Notice of Levy to Andrew, as executor of Mr. Edwards’s succession, regarding $739,667.92 in taxes owed by Peck. The Notice affected Peck’s “property and rights to property” and instructed Andrew to “Turn over any other money, property, credits, etc. that you have or are already obligated to pay the taxpayer, when you would have paid it if this person asked for payment.”
Mrs. Edwards died in 2003, triggering Peck’s usufruct of the bank stock. At the time of Mrs. Edwards’s death, the 2000 levy on Peck’s | «property had not been cancelled. Several weeks after Mrs. Edwards’s death, Andrew received another IRS Notice of Levy in the amount of $931,751.86 for taxes owed by Peck. Andrew received a third Notice of Levy regarding Peck’s property in 2006 in the amount of $1,074,45232.
As a result of the notices of levy, Andrew retained possession of the bank stock during Peck’s usufruct. However, in accordance with Peck’s written request, Andrew sent the IRS $90,000.00 in 2007 as a partial payment of Peck’s federal tax debt. The $90,000.00 came primarily from Peck’s usufruct of the bank stock.
On December 17, 2009, Peck executed a Transfer of Usufructuary Rights as Payment of Debt in which he relinquished, transferred, and delivered to his children, Ashley and Hawk, “all of his rights of usufruct over any and all of the assets in the Estate of Byard Edwards, Sr. and the Estate of Neville Reid Edwards ... with warranty and with full subrogation to all rights of warranty in said usufructuary rights which are held by Byard “Peck” Edwards, Jr.” In exchange for this transfer of usufructuary rights to the bank stock, Ashley and Hawk agreed to forgive Peck’s debt arising from two promissory notes in the total amount of $475,000.00.
On July 21, 2010, subsequent to Peck’s transfer of his usufructuary interests in the bank stock, the IRS released the levy on Peck’s property and rights to property.
On August 5, 2011, Peck filed suit against Andrew and their sister Beryl Edwards Trawick, alleging that Andrew had retained possession and control of the bank stock after the administration of their parents’ successions had ended without informing Peck, Ashley, or Hawk of the existence of their rights in the bank stock. Peck also alleged that Beryl sold some of the stock which was mistakenly registered in her name, even though Peck had |4usufructuary rights to the stock. Although Peck had already transferred his usufructuary rights to the stock at the time he filed suit, he alleged that “because of the wrongful acts of the two defendants ... [he] was deprived of his right to the opportunity to utilize all of his usufructuary rights inherent therein and the defendant’s [sic] are liable therefore unto him for all amounts and special and general damages suffered by plaintiff.”
Andrew filed a motion for summary judgment, asserting that Peck has no rights to the bank stock due to the 2009 transfer of his usufructuary rights to Ashley and Hawk. Andrew also sought summary judgment on the grounds that he is immune under federal tax law from any liability. Finally, Andrew asserted that Peck’s claims are res judicata, as he has made the same allegations in two prior suits which were both dismissed with prejudice.
After a hearing, the trial court granted summary judgment and dismissed all of Peck’s claims against Andrew with prejudice. In so ruling, the trial court found *13 that Peck had no rights to the bank stock until Mrs. Edwards’s death in 2003. By the time of her death, the tax levy was in place. By the time the IRS cancelled the liens, Peck had transferred all of his rights relating to the bank stock to Ashley and Hawk. The trial court reasoned that since Andrew was never discharged as executor of his father’s succession in accordance with La. C.C.P. art. 3391, he continued to have the responsibilities of an executor, and therefore Andrew could not deliver anything to Peck because under 26 U.S.C. § 6332, Peck’s rights in the bank stock were held in custody for the United States until the tax levies were completely released.
Peck appealed, alleging that his transfer of his usufructuary rights to his children did not transfer his right to seek the fruits which accrued during his usufruct; that the tax levies did not prohibit Andrew from transferring the | -stocks and fruits to Peck after his mother’s death; that the stocks were not subject to the levies; that Andrew did not hold the stocks in custody for the United States until the levies were released; and that Andrew was not acting as executor of his father’s succession after the judgment of possession was filed.
DISCUSSION
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1 Cir. 6/20/97), 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97), 703 So.2d 29. Summary judgment is properly granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B). In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. Fernandez v. Hebert, 06-1558, p. 8 (La.App. 1 Cir. 5/4/07), 961 So.2d 404, 408, writ denied, 07-1123 (La.9/21/07), 964 So.2d 333. A fact is material if it potentially insures or precludes recovery, affects a litigant’s ultimate success, or determines the outcome of the legal dispute. Anglin v. Anglin, 05-1233, p. 5 (La.App. 1 Cir. 6/9/06), 938 So.2d 766, 769. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of trial on the merits. Fernandez, 06-1558 at 8, 961 So.2d at 408. Summary judgment is favored and “is designed to secure the just, speedy, and inexpensive determination of every action.” La. C.C.P. art. 966(A)(2).
lfiIn determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Sanders, 96-1751 at p. 7, 696 So.2d at 1035. Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Walker v. Phi Beta Sigma Fraternity (Rho Chapter), 96-2345, p. 6 (La.App. 1 Cir. 12/29/97), 706 So.2d 525, 528.
An incorporeal right[2] to which a person has been subrogated, either conventionally or by effect of law, shall be enforced judicially by the subrogee when the entire right is subrogated. La. C.C.P. art. 697(2). Furthermore, an incorporeal right which has been assigned shall be enforced judicially by the assignee when the entire *14 right is assigned. La. C.C.P. art. 698(2). If there has been a total subrogation or assignment of a right, suit may not be brought to enforce that right in the name of the subrogor/assignor, as he has no right of action. See La. C.C.P. art. 697, Comment (c) and art. 698, Comment (d).
In the Transfer of Usufructuary Rights as Payment of Debt, Peck agreed to “relinquish, transfer and deliver ... all of his rights of usufruct over any and all of the assets in the Estate of Byard Edwards, Sr. and the Estate of Neville Reid Edwards ... with warranty and full subrogation to all rights of warranty in said usufructuary rights which are held by Byard “Peck” Edwards, Jr.” (emphasis added). It is clear from the language of this agreement that Peck transferred the entirety of his usufructuary rights to his children. As a result of the Transfer of Usufructruary Rights as Payment of Debt, Peck no longer had any real and actual interest in the usufruct. | ./Therefore, once Ashley and Hawk were assigned and subrogated to the entirety of Peck’s usufructuary rights, Peck no longer had a right of action to raise claims arising from the usufruct. See La. C.C.P. art. 681.
Because we have concluded that Peck no longer has a right of action to raise any claims arising from the usufruct. Peck’s remaining assignments of error are moot.
CONCLUSION
The trial court judgment granting summary judgment and dismissing all of Peck’s claims against Andrew with prejudice is affirmed. Costs of this appeal are assessed to Byard “Peck” Edwards, Jr.
AFFIRMED.

. Hawk’s full name is Byard Edward, III.

. Usufruct is an incorporeal thing. La. C.C. art. 540.