821 So.2d 52 (2002)
Earl A. KAISER, III
v.
WESTERN-SOUTHERN INSURANCE COMPANY.
No. 01-CA-1393.
Court of Appeal of Louisiana, Fifth Circuit.
May 15, 2002.
*53 Earl A. Kaiser, III, Marrero, LA, Appellant in Proper Person, Brief prepared by Julie G. Kaiser, due to Earl A. Kaiser, III's inability to compose and type himself because of his physically and mentally disabled conditions.
John J. Rabalais, Janice B. Unland, Robert T. Lorio, David S. Pittman, Rabalais, Unland & Lorio, Covington, LA, for Appellee, Western-Southern Life Insurance Company.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and CLARENCE E. McMANUS.
CANNELLA, Judge.
Plaintiff, Earl Kaiser, III, in proper person, appeals a judgment in a workers' compensation case denying reinstatement of workers' compensation benefits from his employer, Western Southern Life Insurance Company. We affirm.
The Plaintiff suffered two automobile accidents while in the course and scope of his employment as a debit salesman for the Defendant. The first occurred in 1988 and the second in 1990. He did not file a workers' compensation claim following the first accident. After the second accident, in March of 1990, the Plaintiff began receiving workers' compensation indemnity and medical benefits. He did not return to work after that accident.
Over the course of several years, the Plaintiff underwent four back surgeries. The last was in 1995. Prior to that surgery, in 1992, he was awarded social security disability benefits. In 1994, the workers' *54 compensation indemnity benefits were converted to supplemental earnings benefits (SEBs). In 1995, following the last surgery, the Defendant reinstated the workers' compensation indemnity benefits. Those were again converted to SEBs in 1999, based on the employer's determination that there were jobs available that he could perform.
On May 6, 1999, the Defendant filed a disputed claim with the Office of Workers' Compensation to reduce the benefits due to the Plaintiff's refusal to cooperate with vocational rehabilitation efforts. On May 24, 1999, the workers' compensation judge ordered the Plaintiff to cooperate, but denied the Defendant's motion to reduce benefits. In February of 2000, the Defendant filed a motion to terminate benefits, which was denied. In June of 2000, the Plaintiff filed a reconventional demand for medical bills from the accident in 1988 to be paid.
The Defendant terminated the SEBs benefits in July of 2000, but continued to pay the Plaintiff's medical bills. By this date, the Plaintiff had received SEBs for 536 weeks, 16 weeks more than the maximum of 520 weeks. See: La.R.S. 23:1221(3)(d).[1] The Plaintiff responded with a supplemental reconventional demand for reinstatement of the original indemnity benefits, medical payments, penalties, and attorneys fees.
A trial of the Plaintiff's entitlement to disability benefits, medical payments penalties, and attorney's fees was held on March 5, 2001. On May 15, 2001, the workers' compensation judge ruled in favor of the Defendant. In the judgment he found that the Plaintiff had reached maximum medical improvement (MMI), but is capable of working at a sedentary level. He further concluded that the Plaintiff is not entitled to any further indemnity or medical benefits of any kind because the Plaintiff failed to prove by clear and convincing evidence that he is totally and permanently disabled. The judgment further denied payment of certain medical bills on the basis that they were either not related to the 1990 accident or not properly submitted on the HCFA 1500 forms, which he found are specifically required by law for the submission of medical bills in workers' compensation cases, under Title 40, Part I, Chapter 51 of the Workers's Administrative Rules. The judgement also states that the Plaintiff failed to cooperate with vocational rehabilitation, was not a credible witness, and that any claims for reimbursement for benefits arising out of the December 6, 1988 accident is prescribed. Costs of the proceedings were assessed against the Plaintiff.
The Plaintiff filed an appeal in proper person. We interpret his brief to assert that the trial judge erred in these findings.
The medical testimony and reports show that the Plaintiff incurred a serious lumbar disc back injury that was either caused by or aggravated by the 1990 accident. Following the 1990 accident, he underwent a discectomy, which failed and necessitated a second surgical intervention in 1991. He underwent a percutaneous laser discectomy in 1992, and a lumbar fusion in 1995. After the fourth surgery, he was diagnosed with "failed back syndrome," which means that the corrections made by the prior surgeries failed. He now has scarring in the lumbar area, his nerves are impinged, and his spine is now unstable.
The various doctors involved in his treatment over the years agree that he continues to have pain and that there is nothing that they can do to cure it. Thus, he has reached MMI. He has been treated *55 with drugs and trigger point injections into the spine, which relieve his pain temporarily. The possibility of a spinal cord stimulator implant procedure has been considered, but is not given a high chance of a long-term success. The doctors agree that he is restricted from repetitive bending, lifting, climbing, walking, and sitting for long periods.
The Plaintiff was referred to Dr. Donald Richardson, a neurosurgeon, by Dr. Hugh Fleming, a neurologist. He examined the Plaintiff on October 30, 1998, March 22, 1999, and October 18, 1999. He concluded that the implant surgery might be helpful. However, he recommended a chronic pain work up, which includes psychological testing and evaluation, detoxification and group sessions, before offering the Plaintiff the implant procedure because the Plaintiff might not be a good candidate due to his depression. At any rate, the recovery period for this surgery was only six to twelve weeks. He also disagreed with a recommendation by Dr. Barbara Smith for the use of electro-cuticle heat. He felt that both electro-cuticle heat and the injections given by Dr. Harry Philibert were useless.
Dr. Richardson concluded that the Plaintiff can perform light sedentary work, with no repeated bending, standing, lifting, and which allows him to alternate standing and sitting. Although he agreed that Plaintiff could perform inside telephone sales, he thought that the Plaintiff cannot go out of the house to work. Dr. Richardson further felt that it is unrealistic to expect this patient to successfully hold a job, based on his experience with patients with this level of chronic pain.
Dr. Mimeles, the independent medical examiner (IME), examined the Plaintiff on January 26, 1999 and again in May of 1999. Like Dr. Richardson, he thought that the injections of cortisone being given to the Plaintiff should be stopped. He noted that the Plaintiff was receiving up to 30 per week and cortisone has long-term side effects. He agreed that the Plaintiff has chronic pain from permanent and irreversible nerve root irritation and has reached MMI. Although he stated that the Plaintiff needs to move around, Dr. Mimeles testified that the Plaintiff can only perform minimal sedentary work, with the restrictions noted by Dr. Richardson. Dr. Mimeles stated that the Plaintiff should attempt one of the jobs found for him, but if he is unable to continue working, then he should have a functional capacity evaluation.
Numerous medical reports were introduced into evidence. Those show that, Dr. Robert Applebaum, a neurosurgeon, examined the Plaintiff in 1998. He found the Plaintiff to be at MMI at that time, but capable of returning to some type of light sedentary work. In June of 1999, he was examined by Dr. Richard Ronigar, a psychiatrist, who also reviewed his medical and psychiatric records. He concluded that the Plaintiff suffers from major depression and chronic pain syndrome. He stated that a return to some type of employment would be therapeutic. In March of 1999, a report by Dr. Fleming states that the Plaintiff suffers from failed back syndrome and lumbar fibromyositis. He did not make a return to work recommendation. At a meeting with Michelle Hoppe (Hoppe) in September of 1999, he informed her that he was retiring and would no longer be treating the Plaintiff. He refused to review the individual job descriptions and stated that he would leave the decision to work up to the Plaintiff. However, in their reports in August of 1999, Dr. Harry Philibert, a pain specialist, and Dr. Barbara Smith, a neurologist, indicated that the Plaintiff was not capable of returning to work.
*56 In October of 1999, the Defendant hired Hoppe Consulting Services to conduct a job market survey to determine the availability of jobs that the Plaintiff could perform in his geographic area. Hoppe, a licensed vocational rehabilitation expert, communicated frequently with the doctors involved in the Plaintiffs treatment and with the Plaintiff. She found several sedentary sales jobs that were available to the Plaintiff in 1999 involving inside telephone sales. In addition, Hoppe found one job that the Plaintiff could do in his home. The inside telephone sales jobs were at Advantage Innovations, Avis Car Rental, and Syndistar. Work Enterprises of Louisiana had a position performing in-home work, labeling and decorating bottles of bath salts. Dr. Richardson and Dr. Mimeles approved the four jobs. According to Hoppe, who met with and communicated with the Plaintiff, the Plaintiff was notified of the positions of the doctors' approval, and who to contact, but did not respond. She stated that the Plaintiff did not seem interested in returning to the workforce in any capacity.
In regard to the in-home position, Jack Arcenaux (Arcenaux), the Director of Work Enterprises, testified that his company employs many homebound workers. The company provides the employee with bottles of bath salts, which the employee labels and decorates with seasonal ribbons. The bath salts are delivered to and picked up from the employee's home. Not all of the employees are disabled, but Arcenaux testified that the job can be accommodated to any restrictions placed on the disabled in-home employee. The position pays $5.15/hour. During the week of training, the Plaintiff would work a maximum of 30 hours. After the training period, the employee can work whatever hours he chooses. Arcenaux sent a letter to the Plaintiff and his attorney offering the Plaintiff a position, but the only response was a telephone call on a Sunday when Arcenaux was not at work, in which the Plaintiff made a rather hostile comment about Arcenaux's message not being important since no one was there to answer the phone. Neither the Plaintiff nor his attorney contacted Arcenaux again, and Arcenaux never contacted the Plaintiff. However, Arcenaux stated that job was still available to the Plaintiff at the time of trial.
The Plaintiff admits in his brief that he has reached MMI due to a "failed back syndrome." However, he contends that he is totally permanently disabled and cannot work because of the severe continuing pain restricting his movements and the complications from the pain medications. He argues that the pain relievers cause drowsiness. In addition, he suffers from insomnia from the depression resulting from the injury, which further causes him to be sleepy during the day. In his testimony, the Plaintiff claimed that he cannot perform simple tasks, such as washing and dressing without help or resting frequently. He wears a back brace and has difficulty bending, walking, and sitting for long periods, which impedes his driving. His wife helps him to bathe, and he dresses in stages. The Plaintiff claims that, when he shops for groceries with his wife, he can only reach the items on the shelf at eye level and his wife puts the groceries in the car. He stated that he had not worked under the hood of the car for seven years and has difficulty walking up stairs.
The Plaintiff testified that he did not pursue any of the work opportunities because he was "on hold." He stated that he was waiting to have the pending implant procedure, but he was not able to set it up because the Defendant would not pay for it. However, this is contradicted by the testimony of Dr. Richardson and the Defendant's claims examiner, Ramsey Horn *57 (Horn). Dr. Richardson stated that this procedure was presented to the Plaintiff only as a possibility, and only after a complete psychiatric work-up was done to see if the Plaintiff was a good candidate. The doctor stated that the Plaintiff never indicated whether he wanted the surgery and no definitive plans for the Plaintiff to have the work-up or the procedure were made. Horn similarly testified that he had never received a request to pay for this procedure.
The Plaintiff further denied that Hoppe discussed the jobs with him, contrary to Hoppe's testimony. He also denied that Dr. Mimeles approved his return to work, although the medical documentation shows that the doctor approved the jobs presented by Hoppe.
Mark Staub, investigator with Delta Research Group, testified that he videotaped the Plaintiff intermittently in 1998 and 1999. Two tapes were produced. In the July of 1998 tape, the Plaintiff is shown returning to his car pushing a shopping basket. He is alone and his movements do not appear to be constrained, but it cannot be determined if he is in pain since he is holding on to the basket. When the Plaintiff reached the car, he opened the back window of his van or SUV, and unloaded the various plastic grocery bags into the back through the window. He did not need to bend down to unload the bags. The second video taken in May of 1999 showed the Plaintiff at a car repair shop, walking around while talking to another man. At one point, he bends under the hood of his car looking at something in the engine area, and apparently discussing the engine problem with that person. However, each of these videos last only a few minutes and are taken on two separate days more than one year apart. The Plaintiff does not appear to be in any physical distress in the videos, but he testified that his back pain waxes and wanes, which is consistent with his condition.

A) PRESCRIPTION OF CLAIMS RELATED TO 1988 ACCIDENT

First, we find that the trial judge did not err in finding that any claim for injuries related to the 1988 accident have prescribed. A workers' compensation claimant has one year from the date of the accident to file a formal workers' compensation claim for injuries. La.R.S. 23:1209. Furthermore, when the injury does not develop at the time of, or immediately after the accident, the claimant has one year from the time the injury develops to file a claim, but in no case more than two years from the date of the accident. Id. The Plaintiff did not file a claim within two years after the 1988 accident. Thus, he is forever barred from asserting a claim based on that accident, as it is prescribed.
Although claims related to the 1988 accident are prescribed, it is clear that the 1990 accident either caused new injuries to his back or aggravated a pre-existing condition. Thus, the Plaintiff is not precluded from raising claims related to the 1990 accident.

B) TEMPORARY TOTAL AND PERMANENT TOTAL DISABILITY

La.R.S. 23:1221 provides for the payment of total temporary disability, and total permanent disability in workers' compensation cases, as follows:
(1) Temporary total.
(a) For any injury producing temporary total disability of an employee to engage in any self-employment or occupation for wages, ...
(c) For purposes of Subparagraph (1)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (1)(b) of this Paragraph, *58 compensation for temporary total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including but not limited to any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment.
(2) Permanent total.
(a) For any injury producing permanent total disability of an employee to engage in any self-employment or occupation for wages, ...
(c) For purposes of Subparagraph (2)(a) of this Paragraph, whenever the employee is not engaged in any employment or self-employment as described in Subparagraph (2)(b) of this Paragraph, compensation for permanent total disability shall be awarded only if the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-employment, including, but not limited to, any and all odd-lot employment, sheltered employment, or employment while working in any pain, notwithstanding the location or availability of any such employment or self-employment. [Emphasis added]
The Plaintiff contends in one part of his brief that he has not reached MMI, but admits it in another section. Nevertheless, the evidence is overwhelming that the Plaintiff had reached MMI at the time that the Defendant instituted the job market survey. Furthermore, the fact that the surgical implant procedure was a possibility at the time that the four possible jobs were found, does not change this finding. First, the implant procedure was presented as only a possibility. Second, the Plaintiff did not tell the doctor that he wanted to have the procedure, nor did he follow through with the suggestion that he first undergo the prerequisite psychiatric work-up. Thus, there were no plans to go forward with the procedure. Third, Dr. Richardson stated that the procedure might or might not help the Plaintiff. Although he was not optimistic that it would be successful, he thought it would not hurt to try it. Even so, any recovery from that procedure would only be, at most, twelve weeks. Thus, we find no error in the finding by the trial judge that the Plaintiff had reached maximum medical improvement.
Next, the trial judge found that the Plaintiff was not permanently disabled, because he failed to prove by clear and convincing evidence that he cannot engage in some type of sedentary work.
"Clear and convincing" in the workers' compensation context is "an `intermediate' standard falling somewhere between the ordinary preponderance of the evidence civil standard and the beyond a reasonable doubt criminal standard." Hatcherson v. Diebold, Inc., 00-3263 at p. 4 (La.5/15/01), 784 So.2d 1284, 1288 (citing Black's Law Dictionary 227 (5th ed.1979)); Comeaux v. City of Crowley 01-0032 (La.7/3/01), 793 So.2d 1215, 1220.
The factual findings by the trial judge are subject to the manifest error or clearly wrong standard of appellate review. Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375, 381. In applying this standard of review, we must determine not whether the trier of fact *59 was right or wrong, but whether the conclusion was a reasonable one. Id. When there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Chaisson, 708 So.2d at 381. "Thus, if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Sistler v. Liberty Mut. Ins. Co., 558 So.2d 1106, 1112 (La.1990); Chaisson 708 So.2d at 381.
Although the Plaintiff suffers chronic pain, that fact alone is insufficient to satisfy his burden of proving by clear and convincing evidence that he cannot engage in any work. See: R.S. 23:1221(1), (2). See: Degrasse v. Elevating Boats, Inc., 98-1406 (La.App. 4th Cir.3/10/99), 740 So.2d 660, 664. Further, the trial judge was not persuaded that the Plaintiffs medications impair him so substantially that the combination of the pain and the medications preclude his ability to work. Although two doctors, in very brief reports, stated that the Plaintiff cannot work, several other doctors found that he could perform light, sedentary work, within his restrictions. Four jobs were presented to the Plaintiff within those restrictions, one of which the Plaintiff could do at home at his own pace. Although Dr. Richardson stated that an attempt to return to work by the Plaintiff might ultimately fail, the Plaintiff failed to make any good faith attempt to return to work. Based on these facts, the trial judge believed that the Plaintiff is able to work in a sedentary job.
Reasonable evaluations of credibility and reasonable inferences of fact by the trial court will not be disturbed, even though our appellate review may lead us to another reasonable evaluation. Lee v. Alton Ochsner Medical Foundation, 01-650 (La.App. 5th Cir.10/17/01), 798 So.2d 1225, 1229. Based on these facts, we cannot say that the workers' compensation judge was clearly wrong in finding that the Plaintiff failed to prove that he is permanently totally or temporarily disabled. Thus, the trial judge did not err in finding that the Plaintiff is not entitled to further indemnity or medical benefits.

C) PLAINTIFF'S CREDIBILITY AND COOPERATION

The trial judge found that the Plaintiff refused to cooperate with vocational rehabilitation. The evidence shows that the Plaintiff failed to attempt any type of vocational rehabilitation. Thus, we find no manifest error in this conclusion.
The trial judge further found that the Plaintiffs testimony was not credible. He was in the best position to determine the credibility of the Plaintiff and his determination demands great deference, "for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." Rosell v. ESCO, 549 So.2d 840, 844 (La.1989) (citations omitted); Gray v. Prince Dump Truck Service, 00-1925 (La.App. 5th Cir.4/25/01); 785 So.2d 1018, 1021. Thus, we find no manifest error in this regard.

D) UNPAID MEDICAL EXPENSES

The last issue is whether the trial judge erred in failing to award certain medical expenses that the Plaintiff contended were not paid. The trial judge found that there was no evidence that the expenses were connected with the injury in 1990 and further that they were not presented to the Defendant on the mandatory form. This was supported by the testimony of Horn, who testified that he returned one radiology bill, with a request to submit *60 the claim on the HCFA form required by the workers' compensation rules. Since this was never done, that bill was the only one not paid. Furthermore, he testified that he paid all bills that were submitted properly and that were shown to be related to the 1990 accident. Based on this evidence, we find no manifest error in the trial judge's ruling that the Plaintiff is not entitled to reimbursement for those unsupported or improperly submitted medical bills.
Accordingly, the judgment is hereby affirmed. Costs of the appeal are to be paid by the Plaintiff.
AFFIRMED.
NOTES
[1] La.R.S. 23:1221(3)(d) states that "The right to supplemental earnings benefits pursuant to this Paragraph shall in no event exceed a maximum of five hundred twenty weeks...."