3THOMAS F. DALEY, Judge.
Appellant/third party plaintiff, James E. Shields, Sr. (Shields), filed an incidental action seeking indemnity and/or contribution from Joseph Caldarera (Caldarera), a co-defendant in the original action, following Shields’s payment of $30,000.00 to plaintiffs. In the original action, filed in 1989, original plaintiff, Investors Bank & Trust,[1] sued Shields and Caldarera on an obligation for a promissory note guaranteed by Shields and Caldarera, among others.[2] On the promissory note’s indebtedness, judgment was rendered against Shields on January 25, 1993, and against *930 Caldarera on June 30, 1997. The 1997 judgment declared that Caldarera and Shields were liable in solido. Caldarera moved for a new trial, which was granted.[3] At this point, the matter has not been retried as to Caldarera, because Caldarera moved to bifurcate the trial of the main demand (his liability on |4the promissory note) and Shields’s incidental demand, arguing that trial of Shields’s demand would be shorter in duration and might be dis-positive of the main demand. The trial court granted the Motion to Bifurcate and trial proceeded on September 5, 2001, only on Shields’s third party demand, which alleged that he had paid the entire indebtedness on the promissory note and was therefore entitled to contribution from Cal-darera, his co-guarantor. The trial court found that Shields’s payment of the $30,000.00 was for his virile share only and that the entire indebtedness had not been satisfied. The trial court found that the plaintiff had reserved its right against any other obligors on the note (which could possibly be Caldarera), and dismissed Shields’s third party demand against Cal-darera. This appeal follows.
After thorough consideration of the record before us, we amend the revised judgment. We find that the evidence shows that Shields’s payment of $30,000.00 satisfied the 1993 judgment against him, but did not pay off the full indebtedness due on the promissory note. Shields failed to bear his burden of proof that he had a verbal agreement with the bank that his tender satisfied the entire indebtedness on the note. Because the record does not establish the full amount of the indebtedness, the trial court erred, however, in concluding that Shields’s payment satisfied only his virile share of the indebtedness. Only when the total amount of the indebtedness is established, and how many people are obligors, can the trial court determine whether the $30,000.00 was in payment of only Shields’s virile share, or if he is entitled to some contribution from his co-obligors.

Analysis

The factual findings by the trial judge are subject to the manifest error or clearly wrong standard of appellate review. In applying this standard of review, we must determine not whether the trier of fact was right or wrong, but whether the | ^conclusion was a reasonable one. When there are two permissible views of the evidence, a fact finder’s choice between them can never be manifestly erroneous or clearly wrong. Kaiser v. Western-Southern Ins. Co., 01-1393 (La.App. 5 Cir. 5/15/02), 821 So.2d 52.
Shields makes seven Assignments of Error, the first four of which essentially go to the issue of whether the evidence showed he had a verbal agreement with the bank regarding whether the debt was paid in full or not by his $30,000.00 tender. First, Shields argues that the evidence shows that he, in September of 2000, entered into an agreement with appellee bank to pay $30,000.00 to satisfy the entire indebtedness and to seek contribution against third party defendants; second, Shields argues that his filing of the second amended third party action indicated intent and the meeting of the minds [with appellee]; third, that the bank did not prepare a satisfaction of judgment in conformity with the verbal agreement and the meeting of the minds; and fourth, that the appellee bank did not give Shields a release and satisfaction of judgment on October 28, 2000. Shields also argues that Exhibits 9a and *931 9b should be stricken from the record because they were produced for the first time at trial and are post facto; that he is not bound by a receipt and release that he did not sign, and that the judgment of September 21, 2001 is contrary to the law and evidence.
LSA-C.C. art. 1804 governs contribution among solidary obligors. It states:
Art. 1804. Liability of solidary obligors between themselves
Among solidary obligors, each is liable for his virile portion. If the obligation arises from a contract or quasi-contract, virile portions are equal in the absence of agreement or judgment to the contrary. If the obligation arises from an offense or quasi-offense, a virile portion is proportionate to the fault of each obli-gor.
A solidary obligor who has rendered the whole performance, though subro-gated to the right of the obligee, may claim from the other obligors no more than the virile portion of each.
|fiIf the circumstances giving rise to the solidary obligation concern only one of the obligors, that obligor is liable for the whole to the other obligors who are then considered only as his sureties.
LSA-C.C. art. 3057 states:
Art. 3057. Limitation upon right of contribution
A surety who pays the creditor more than his share may recover the excess from his co-sureties in proportion to the amount of the obligation each is to bear as to him. If a surety obtains the conventional discharge of other co-sureties by paying the creditor, any reduction in the amount owed by those released benefits them proportionately.
Shields failed to show, by a preponderance of the evidence, that Shields and the bank had a verbal agreement that his tender satisfied the indebtedness in full He alleged at trial that he entered into an oral agreement with Mr. Fadaol, the plaintiffs’ attorney, to this effect. At trial, Mr. Fa-daol disagreed. Mr. Fadaol stated that the liability on the promissory note, by the date of settlement, was considerably more than $30,000.00, and that his clients did not, and had no reason to, accept only $30,000.00 in full satisfaction of the debt. Mr. Fadaol claimed that Mr. Shields’s tender was only for satisfaction of the 1993 judgment against him and for his virile share, with the bank reserving its right to pursue Caldarera and other co-guarantors for their virile shares. Mr. Fadaol stated that the 2000 agreement for Shields to tender $30,000.00 came about because the 1993 judgment against Shields, which was recorded, was clouding the title to a piece of immovable property that Shields desired to sell, and Shields wanted to get the judgment erased and consummate the sale to avoid being sued by the purchaser. Shields did not recall these specific circumstances, but did not deny that the judgment did cloud title to the land he wanted to sell.
Shields argued that his filing of the Amended Petition (Second Amended Third Party Action) on September 22, 2000, showed the intent and verbal agreement reached between him and the bank that the debt would be fully satisfied. |7We disagree. Pleadings are not evidence; they are merely the allegations that a party wishes to prove. Law Offices of Robert M. Becnel v. Ancale, 00-295 (La.App. 5 Cir. 9/26/00), 769 So.2d 761; Department of Health and Hospitals v. Teachers’ Retirement System of Louisiana, 95-1034 (La.App. 1 Cir. 12/15/95), 665 So.2d 748.
Shields argues that the Satisfaction of Judgment prepared by the bank and sent to him shows that the entire indebtedness was satisfied. He also argues that several *932 subsequent documents entitled Satisfaction of Judgment should be stricken from the record because they were produced for the first time at trial, and were clearly prepared after he had tendered the money. Entered into evidence were three separate documents entitled “Satisfaction of Judgment,” including the Exhibits 9a and 9b that Shields argues should be stricken from the record. The first one, which Mr. Shields testified was the only one he had ever received and was attached to his brief as Exhibit 6, contained numerous mistakes of form (misspelling names, incorrect date of underlying 1993 judgment). Mr. Fadaol told the trial court that the Clerk’s office in Jefferson Parish had rejected this document because of the mistakes of form, and in consequence thereof he refiled a corrected copy with the names spelled correctly and the correct date, January 25, 1993, of the underlying judgment against Shields. The only signature on any of these documents is Fadaol’s. The corrected copy that was ultimately filed in the parish records, but not forwarded to Shields (according to him), additionally recites that the judgment was satisfied as to Shields only.
We find that these documents do not support Shields’s assertion that the indebtedness was paid in full. Even the first Satisfaction of Judgment, the one rejected by the Clerk, but the only one allegedly received by Shields, clearly refers only to the 1993 judgment against Shields. It does not state that the promissory note’s total indebtedness has been satisfied.
| sShields testified that he had received the Receipt, Release, and Indemnity Agreement from plaintiffs sometime after he paid the money, in or about February 2001, but did not object to its language until trial. Shields testified that he didn’t type up the document or sign it, and that it didn’t reflect his agreement with plaintiffs. He argued that he was not bound by a document he didn’t sign. The evidence shows that Shields did receive this document well before trial and failed to object to the wording of it until trial, which undercuts his position that an agreement contrary to it existed.
We find that the evidence clearly shows that Shields’s tender of $30,000.00 satisfied the 1993 judgment against him, but he did not prove by a preponderance of the evidence that the bank took this payment in satisfaction of the total debt. However, the trial judge erred dismissing Shields’s third party demand against Cal-darera for contribution. This ruling was premature. The evidence did not establish the dollar amount of the total indebtedness on the promissory note because the interest due was never calculated. Various figures were discussed in the record, from $48,000.00 to $58,000.00. Under LSA-C.C. art. 3057, Shields has a right to receive contribution from his co-obligors for any amount he paid that is over his virile share. Unless there is a provision in the promissory note to the contrary, virile shares are by heads. There is no contrary provision. Assuming arguendo that there are two or more obligors, and that the total indebtedness was under $60,000.00, Shields may have paid more than his virile share and thus would be entitled to contribution from his co-obligors for the excess payment. Until the total amount of the indebtedness is established with certainty, and until the matter has been tried as to Caldarera’s status as a co-obligor on the note, dismissal of the third party demand was premature. Therefore, we will reverse that portion of the judgment.
| ¡^Accordingly, we amend that portion of the September 21, 2001 judgment that finds that Shields’s payment was for his virile portion only, and find that he has satisfied the 1993 judgment against him *933 only. We reverse that portion of the judgment that dismissed Shields’s third party demand against Caldarera, and reinstate that action. We remand for further proceedings consistent with this opinion.

AFFIRMED IN PART AS AMENDED; REVERSED IN PART AND REMANDED

. In 1992, Investors sold the promissory note to Ben A. Seal, L.J. Boudreaux, and Claude Autin, d/b/a Ja-Bob Investment Co. They were substituted as parties plaintiff for Investors on January 5, 1993.

. The promissory note was in the name of Sea Pack International, Inc., dated March 21, 1986, in the original sum of $21,000.00, bearing interest rate of 14% per annum payable to Investors Bank & Trust and endorsed in blank by C. Paul Alonzo, president of Sea Pack, and further endorsed by C. Paul Alonzo, James E. Shields, Wayne Abreu, Michael A. Faia, Jr., Robert W. Abney, Otis Burmaster, and Joseph Caldarera.

. Caldarera moved for a new trial based on new evidence that the promissory note's indebtedness had been discharged in full in the bankruptcy proceedings of Otis Burmaster, another co-endorser of the note.