RKUHN, Judge.
This is an appeal from a judgment dismissing plaintiffs claims against defen *249 dant-manufacturer on a motion for summary judgment. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
On January 26,1994, while working as a maintenance helper at the Magnolia Gardens Apartments in Baton Rouge, Louisiana, plaintiff-appellant, Matthew Eirick, sustained injuries to his face and arms. Plaintiff, assisted by a co-worker, Terry Johnson, had just removed the outer cover to an electrical breaker box, which serviced multiple apartments in the complex, and placed the cover against the building, when “an explosion” occurred.[1] As a result, plaintiff was burned on his face and arms.
On January 17, 1995, plaintiff filed a petition for damages,[2] alleging that defendant-appellee, Square D Company (“Square D”), was liable as the manufacturer of “the breaker and/or fuses” as well as “the original breaker box which may also have been the cause of’ his injuries. On September 6, 1996, Square D filed a motion for summary judgment averring that there were no genuine issues of material fact and that it was entitled to judgment as a matter of law. On October 28, 1996, the trial court granted summary judgment in favor of Square D, and this appeal by plaintiff followed.
SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial where there is no genuine factual dispute. Sanders v. Ashland Oil, Inc., 96-1751, p. 5 (La.App. 1st Cir.6/20/97); 696 So.2d 1031, 1034, writ denied, 97-1911 (La.10/31/97); 703 So.2d 29. It should only be granted if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, show that there is no genuine issue as to ^material fact and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966.
Previously, our cases held that summary judgments were not favored and were to be used cautiously and sparingly. Any doubt was to be resolved against granting the motion and in favor of a trial on the merits. However, in 1996, the legislature amended La.C.C.P. art. 966 to overrule the presumption in favor of trial on the merits. Summary judgment is now favored, and the documents submitted by both parties are to be equally scrutinized. Berzas v. OXY USA Inc., 29,835, pp. 4-5 (La.App.2d Cir. 9/24/97); 699 So.2d 1149, 1152; Hayes v. Autin, 96-287, p. 6 (La. App. 3d Cir. 12/26/96); 685 So.2d 691, 694, writ denied, 97-0281 (La.3/14/97); 690 So.2d 41.
In 1997, by Act. No. 483, the legislature again amended La.C.C.P. art. 966 to incorporate the federal summary judgment analysis as the appropriate test to use in assessing motions for summary judgment.[3] Hayes, 96-287 at p. 7; 685 So.2d at 694. Under the amended version of La.C.C.P. art. 966, the initial burden continues to remain with the mover to show that no genuine issue of material fact exists. If the moving party points out that there is an absence of factual support for one or more elements essential to the adverse *250 party’s claim, action or defense, then the nonmoving party must produce factual support sufficient to satisfy his evidentiary burden at trial. La.C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact and summary judgment should be granted. La.C.C.P. arts. 966 and 967; Berzas, 29,-835 at pp. 7-9; 699 So.2d at 1154.
Appellate courts review summary judgments de novo under the same criteria that govern the trial court’s determination of whether summary judgment is appropriate. Sanders, 96-1751 at p. 7; 696 So.2d at 1035.
^PRODUCTS LIABILITY
Turning to the substantive law in contention in this appeal, we examine the provisions of the Louisiana Products Liability Act (“LPLA”), codified at La.R.S. 9:2800.51-2800.59. The LPLA establishes the exclusive theories of liability for manufacturers for damage caused by their products in LSA-R.S. 9:2800.54:
A. The manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.
B. A product is unreasonably dangerous if and only if:
(1) The product is unreasonably dangerous in construction or composition as provided in R.S. 9:2800.55;
(2) The product is unreasonably dangerous in design as provided in R.S. 9:2800.56;
(3) The product is unreasonably dangerous because an adequate warning about the product has not been provided as provided in R.S. 9:2800.57; or
(4) The product is unreasonably dangerous because it does not conform to an express warranty of the manufacturer about the product as provided in R.S. 9:2800.58.
C. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.55 must exist at the time the product left the control of its manufacturer. The characteristic of the product that renders it unreasonably dangerous under R.S. 9:2800.56 or 9:2800.57 must exist at the time the product left the control of its manufacturer or result from a reasonably anticipated alteration or modification of the product.
D. The claimant has the burden of proving the elements of Subsections A, B and C of this Section.
“Reasonably anticipated use” is defined in La.R.S. 9:2800.53(7) as:
[A] use or handling of a product that the product’s manufacturer should reasonably expect of an ordinary person in the same or similar circumstances.
The parties do not dispute that although it had subsequently been painted over, at the time the breaker box left Square D’s control, affixed to the front cover was a warning stating “DANGER. HAZARD OF ELECTRICAL SHOCK OR BURN. TURN OFF POWER ^SUPPLYING THIS EQUIPMENT BEFORE WORKING INSIDE.” [4] Square D *251 urges plaintiffs intent to work inside the breaker box was clearly established in plaintiffs deposition testimony.
Plaintiff testified that he had spent most of his working career in general maintenance of apartment complexes. His training, he explained, consisted mostly of “on the job” experience. He was not required to have any special qualifications for the Magnolia Apartments position, and his job duties included whatever he was told to do “within [his] knowledge.” Although he had some experience in changing electrical light fixtures, wall switches and wall receptacles, plaintiff testified that he had no formal training and no experience in “heavier electrical work.” He acknowledged that in working on electrical fixtures, he always “cut off the breaker” to avoid getting shocked.
Plaintiff explained that on January 26, 1994, he and Terry Johnson were responding to a work order for apartment 128. Johnson advised plaintiff that the breaker in that apartment was again tripping. Plaintiff and Johnson had recently replaced two inside breakers as well as the breaker outside (at the breaker box) for apartment 123. On January 26th, plaintiff recalled that he and Johnson went to the outside breaker box and, together, removed the screws from the outer cover. Together the two men pulled the cover off, exposing the main breakers for apartment 123 as well as those for two other apartments. According to plaintiffs testimony, as he and Johnson were removing the cover, he knew the power supplying the breaker box had not been turned off. Plaintiff described how he [ thereafter placed the cover on the right side of the building (to which the breaker box was attached) against the bricks. Plaintiff stated, “I set it down and looked back up, and that is when the explosion occurred.” Plaintiff conceded that had there not been an explosion, either he or Johnson would have next loosened the screws that were holding the wires into the breaker for apartment 123.
Because plaintiff testified that he did not shut off the power at the time he removed the cover, his “use” was in clear contravention of the express warning affixed to the breaker box at the time it left Square D’s control. As such, plaintiffs use is not one that a manufacturer should reasonably expect of an ordinary person and, therefore, cannot be a “reasonably anticipated use” as defined in La.R.S. 2800.53(7). Thus, we find that Square D has pointed out that there is an absence of factual support establishing that plaintiffs “use” was a “reasonably anticipated use,” an essential element of plaintiffs evidentiary burden of proving liability on Square D’s part under La.R.S. 9:2800.54.
Once Square D sustained its burden of proof under La.C.C.P. art. 966(C)(2), the burden shifted to plaintiff to produce factual support sufficient to establish that “he will be able to satisfy his evidentiary burden of proof at trial.” We find nothing in the record establishing that in removing the cover to the breaker box, plaintiff had any other intent than to work inside the breaker box. Because plaintiff acknowledged that he did not turn off the power supplying the breaker box, his conduct was clearly in contravention of the express warning affixed by Square D to its product. Accordingly, under the facts of this case, plaintiff has failed to prove that at trial he can put forth evidence showing that his damages arose from a reasonably anticipated use, and under La.C.C.P. art. 966(C)(2), there is no genuine issue of fact.
CONCLUSION
The trial court’s judgment dismissing plaintiffs claims against defendant Square *252 D Company is affirmed. All costs of this appeal are assessed to plaintiff.
AFFIRMED.

. The allegations of plaintiff's petition describe the event as an "explosion”; however, the expert testimony in the record suggests that "an electric flash” occurred. The record fails to establish the relationship between the alleged explosion and the electrical flash.

. We note that plaintiff additionally named as defendants the alleged sellers of "the breaker, breaker box and/or the fuses that exploded”; however, none of the other named defendants is involved in this appeal.

.In Morgan v. The Earnest Corp., 97-0869, p. 7 (La.App. 1st Cir.11/7/97); 704 So.2d 111, 276, writ denied, 97-3031 (La.2/20/98), 709 So.2d 775; this court held that the 1997 amendment to La.C.C.P. art. 966 applied retroactively and is to be utilized by this court in assessing summary judgments granted prior to the effective date of the amendment.

. Plaintiff asserts that Square D failed to introduce any evidence at the hearing on its motion for summary judgment and therefore did not make the requisite showing necessary to sustain the trial court’s granting of summary judgment. Our review of the record reveals that contemporaneous with filing its motion for summary judgment, Square D also filed exhibits into the record in support of its motion. The only exhibit offered by Square D which was not also offered by plaintiff is an affidavit by Raymond A. Diersing. Diersing, Senior Staff Engineer for Square D, attested to the presence of the warning label on the breaker box at issue in this lawsuit. Under La.C.C.P. art. 852, among the express types of permissible pleadings are “written motions.” A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes. La.C.C.P. art. 853. Under La. C.C.P. art. 966(B), the judgment sought shall be rendered forthwith if, inter alia, the plead *251 ings on file show that there is no genuine issue of fact. Additionally, we find the affidavit of Diersing on file in the record conforms to the requisites of La.C.C.P. art. 967. Accordingly, we find no error in the trial court’s consideration of the affidavit attached to Square D’s motion for summary judgment which was filed into the record several months in advance of the hearing.