858 So.2d 545 (2003)
Richard HUNDLEY
v.
BISSO PROPERTIES and Louisiana Workers' Compensation Corporation.
No. 2002 CA 2110.
Court of Appeal of Louisiana, First Circuit.
June 27, 2003.
*546 Cassandra Krebs, Covington, Counsel for Plaintiff/Appellant Richard Hundley.
Frank E. Brown, III, Baton Rouge, Counsel for Defendants/Appellees Louisiana Workers' Compensation Corporation and Bisso Properties.
Before: FOIL, McCLENDON, and KLINE,[1] J.J.
McCLENDON, J.
This is an appeal from a workers' compensation action upholding a decision to reduce a claimant's benefits by an amount equal to wages claimant could have earned pursuant to an alleged job offer, which did not result in employment. For the reasons that follow, we reverse.

*547 FACTS AND PROCEDURAL HISTORY
On January 3, 1997, claimant, Richard Hundley, was working as a carpenter for the defendant/employer, Bisso Properties, repairing a swimming pool enclosure, when he fell approximately twelve to fifteen feet and landed on a concrete surface. Mr. Hundley was knocked unconscious and suffered a concussion. Mr. Hundley asserted that this accident resulted in neck and back pain, contusions, and severe headaches. In addition to his other injuries, Mr. Hundley was subsequently diagnosed with post-concussive syndrome and continued to experience debilitating headaches. Accordingly, Mr. Hundley was receiving supplemental earnings benefits.
Over the ensuing years, Mr. Hundley cooperated with the payor of workers' compensation, the Louisiana Workers' Compensation Corporation (LWCC), in their rehabilitative efforts. However, because of the narcotic medications prescribed for Mr. Hundley, his ability to drive was limited. In July of 2001, Mr. Hundley received correspondence from Work Enterprises, Inc. (WE) indicating that WE had jobs available for work at claimant's home assembling and/or packaging bath salts, Mardi Gras and other party favors, for a maximum of thirty hours per week at $5.15 per hour. Mr. Hundley was asked to telephone the company by July 23, 2001 if interested in a position with the company. Prior to the deadline, Mr. Hundley called WE and expressed an interest in the work. At that time, Mr. Hundley was told by the company representative, Jeff Arceneaux, that an application package would be mailed to him. Mr. Hundley's physician approved the jobs involving assembly and/or packaging of party favors, but would not approve work with bath salts, fearing the aromatic nature of the product would aggravate his headaches.
Mr. Hundley claimed he received no further direct communication from WE. LWCC claimed it received information from WE that an application package was sent to Mr. Hundley, but that he failed to return the package. Based on this information, LWCC reduced Mr. Hundley's workers' compensation benefit by an amount equal to thirty hours per week at $5.15 per hour, effective August 1, 2001.[2]
A disputed claim for compensation was filed by Mr. Hundley on October 17, 2001, seeking reinstatement of full benefits. A hearing was held before the Office of Workers' Compensation (OWC) on May 16, 2002. Mr. Hundley's accident and injury were not disputed. Following testimony by the claimant, the adjuster for LWCC, Kelly Streva, and a vocational rehabilitation counselor, John Russell Pleune, the OWC judge rendered judgment in favor of the employer and the LWCC, upholding the reduction of benefits.
Mr. Hundley appealed and on appeal asserts that: (1) the OWC judge did not properly consider the evidence or apply the law regarding his entitlement to and amount of supplemental earnings benefits, and (2) the OWC judge erred in refusing to award penalties and attorney fees for LWCC having arbitrarily, capriciously, and without benefit of investigation, reduced his supplemental earnings benefits.

LAW AND ANALYSIS
Reduction of Benefits
In the instant case, Mr. Hundley's entitlement to supplemental earnings *548 benefits was not contested; only the defendants' right to reduce the benefits was at issue. Defendants/appellees contend that Mr. Hundley's benefits were properly reduced under LSA-R.S. 23:1221(3)(c)(i).
Under LSA-R.S. 23:1221(3)(c)(i), once the right to supplemental earnings benefits has been established, or is undisputed as in the instant case, the claimant is entitled to collect the amount provided in LSA-R.S. 23:1221(3), which incorporates a reduction for actual wages or wages that could be earned by the claimant. In order to defeat or reduce a claimant's right to supplemental earnings benefits, it must be shown: (1) that a suitable job exists within a claimant's physical capabilities and the parties' community or reasonable geographic region; (2) the amount of wages a claimant could expect to earn at that job; and (3) that an actual position was available for that particular job at the time the claimant received notification of the job's existence. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840, pp. 10-11 (La.7/1/97), 696 So.2d 551, 557.
The claimant/appellant in the instant case, Mr. Hundley, contends defendants failed to show that the job at issue was actually available and further asserts, in the alternative, that there was no showing as to the number of hours that would have actually been worked. Mr. Hundley alleges the LWCC was attempting to purchase a job offer from WE, inferring that the "position" offered by WE could not be considered "employment" within the meaning of LSA-R.S. 23:1221(3).
Oral reasons were given by the OWC judge at the close of the hearing indicating that she found the reduction of Mr. Hundley's supplemental earnings benefits appropriate because, even though he did not receive the information from WE as promised, he had the opportunity to call either WE, Mr. Pleune, Ms. Streva, or his attorney to inquire about non-receipt of the documents. The OWC judge further stated that the telephone conversation between Mr. Hundley and Mr. Arceneaux "was something just short of an offer of employment," but she did not find that Mr. Hundley refused the employment. The OWC judge reasoned that Mr. Hundley had an obligation to find out why he did not receive the application "when so much time had passed." In upholding the reduction of benefits, the OWC judge accepted the defendants' position that the amount of reduction was correct; i.e., the $5.15 per hour WE would have paid for thirty hours of work per week.
On appeal, the factual findings of an OWC judge are subject to the same standard of review as in other cases; i.e., a trial court's finding of fact may not be set aside on appeal unless there is no reasonable factual basis for the finding and the finding is clearly wrong (manifestly erroneous). See Bolton v. B E & K Construction, XXXX-XXXX, p. 7 (La.App. 1 Cir. 6/21/02), 822 So.2d 29, 35; McCray v. Delta Industries, Inc., XXXX-XXXX, p. 4 (La. App. 1 Cir. 9/28/01), 809 So.2d 265, 269. See also Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). If the trier of fact's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse. Consequently, when there are two permissible views of the evidence, the factfinder's choice between them cannot be manifestly erroneous. Bolton v. B E & K Construction, XXXX-XXXX at p. 7, 822 So.2d at 35, citing Sistler v. Liberty Mutual Insurance Company, 558 So.2d 1106, 1112 (La.1990).
Of interest in this case is Exhibit C-2, which is a letter to LWCC representative Jill Leonard from WE. This letter appears to document a contractual arrangement between LWCC and WE whereby WE *549 agreed to "immediately begin to help Mr. Hundley return to gainful employment" when "we receive the first payment." The payment schedule set out in the letter was as follows:
The payment installments will be as follows:
 $3,000.00 due upon receipt of this agreement
 $3,000.00 due when client accepts job offer
 $3,000.00 due 30 days after client accepts job offer
 $3,000.00 due 60 days after client accepts job offer
 $1,000.00 due 90 days after client accepts job offer
Additional conditions contained in the LWCC/WE letter agreement included the following:
1. Receipt of the first payment will activate [WE's] program.
2. Payments will cease to be due if [WE] discontinues services or employment of the client, refuses to accept the client, if the client refuses employment, or if the client settles. Final payment will be calculated on a per diem rate for the applicable installment period.
3. The training program will last ten months.
4. Upon certification by [WE] of successful completion of the training program, the client shall become an employee of [WE], on an "at will" basis, subject to all policies and procedures of [WE], with hours, work schedules, job duties and responsibilities as may be assigned from time to time by [WE], in its sole discretion, taking into account, inter alia, market demand for products of [WE], profitability and other business factors.
The LWCC claims adjuster, Kelly Streva, admitted at the hearing of this matter that LWCC had paid WE $6,000.00 in fees for the company to undertake its attempt to "employ" Mr. Hundley. The letter further referred to the undertaking with respect to Mr. Hundley as "services or employment," giving the impression that the preliminary ten-month training program might be more like a rehabilitative program than actual employment, particularly when the provisions of the letter go on to describe WE's relationship with [Mr. Hundley after the ten-month training program as an "at will" employment and with work to be assigned in WE's sole discretion.
Nevertheless, the decision of the OWC turned on its view that since Mr. Hundley was informed of the existence of a possible available position with WE, he had the obligation to further contact WE when the application package did not arrive as promised. Because we decide that such a conclusion by the OWC judge, under the particular facts of this case was in error, we find it unnecessary to rule on the validity of the WE "position" as "employment."[3]
Mr. Hundley acknowledged at the OWC hearing that he received the initial informational letter from WE in July of 2001.
*550 Mr. Hundley testified that he did call WE, as requested, prior to July 23, 2001, and expressed an interest in a job and was told an application package would be mailed to him. Mr. Hundley also acknowledged that his physician had approved several of the jobs that WE described. However, Mr. Hundley testified that he never received any further correspondence or contact from WE; this testimony was not refuted at the OWC trial.
Mr. Hundley's benefit check for the August 1, 2001 through August 31, 2001 time period, which was dated September 5, 2001, reflected a reduction of benefits based on WE wages for a thirty-hour work week. Mr. Hundley filed a claim disputing the reduction of his benefits in October, 2001. Afterwards, WE mailed a letter, on November 28, 2001, to Mr. Hundley's attorney with a job offer to Mr. Hundley, which expired, by the terms of the letter, on November 30, 2001; this letter was not received by Mr. Hundley's attorney until some time in December, 2001.
Ordinarily we might agree with the finding of the OWC judge that a claimant has a responsibility to follow-up on non-receipt of a promised job application package. However, in the instant case, less than two weeks had elapsed between the time Mr. Hundley contacted WE (prior to July 23, 2001) and the date on which defendants reduced the amount of his workers' compensation benefits (August 1, 2001). Under the facts of this case, we do not think a reasonable amount of time was allowed for said follow-up. Therefore, we conclude that defendants did not bear their burden to prove that an actual position was available for that particular job at the time the claimant received notification of the job's existence.[4]
Since we find that defendants failed to establish there was an actual job available to the claimant prior to the reduction of his benefits, we conclude that the OWC erred in finding the claimant's benefits were properly reduced. We further find that Mr. Hundley's benefits should be reinstated to the full amount of supplemental earnings benefits, retroactive to August 1, 2001.[5]
Penalties and Attorney Fees
Mr. Hundley contends that the failure of Ms. Streva, the LWCC adjuster, to investigate the circumstances of the WE job availability rendered the LWCC arbitrary and capricious in reducing his benefits, and thus entitled him to statutory penalties, attorney fees, and interest, citing Hall v. McDonald Insulation, 537 So.2d 328, 331 (La.App. 1 Cir.1988).
Ms. Streva admitted in her trial testimony that she did not undertake any investigation prior to reducing Mr. Hundley's compensation benefits. Ms. Streva merely assumed that after the first letter was sent to Mr. Hundley that he refused employment *551 with WE, reasoning that WE would have notified her otherwise. It was not until November of 2001, after litigation began, that Ms. Streva received a faxed copy of handwritten notes from WE, indicating the extent of WE's contacts with Mr. Hundley. Ms. Streva testified that Mr. Hundley's benefits should not have been reduced if he did not receive the application package, but admitted that she did not make any inquiry before reducing his benefits as to whether he had in fact received the application package.
An employer must adequately investigate a workers' compensation claim, and the crucial inquiry in determining whether to assess attorney fees is whether the employer had an articulable and objective reason for denying or discontinuing benefits at the time it took that action. Brister v. Sears Authorized Retail Dealer, 99-945, pp. 13-14 (La.App. 3 Cir. 12/8/99), 753 So.2d 871, 879-80, writ denied, XXXX-XXXX (La.2/25/00), 755 So.2d 887. See also Killett v. Sanderson Farms, XXXX-XXXX, p. 12 (La.App. 1 Cir. 5/10/02), 818 So.2d 853, 863.
We believe under the circumstances of this case, the LWCC acted arbitrarily and capriciously in reducing Mr. Hundley's benefits without the benefit of any investigation and based upon the pure speculation of the adjuster.
Mr. Hundley has sought penalties and attorney fees; however, only attorney fees can be awarded pursuant to LSA-R.S. 23:1201.2.[6] Although LSA-R.S. 23:1201 provides for penalties and attorney fees when the insurer failed to commence the payment of benefits in a timely fashion, this case is governed by LSA-R.S. 23:1201.2, which covers instances where benefits had been timely paid but were discontinued or reduced. See Insurance Co. of North America v. Labit, 99-2448, pp. 2-3 (La.App. 1 Cir. 11/15/00), 772 So.2d 385, 387, quoting Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41.
Therefore, we find that Mr. Hundley is entitled to collect attorney fees for the prosecution of this proceeding for the reinstatement of his workers' compensation benefits in the amount of $3,500.00.
Claim for Interest
In brief to this court, Mr. Hundley additionally seeks "all appropriate interest assessed to the defendants." A workers' compensation claimant is entitled to legal interest on past workers' compensation benefits from the due date of each payment, until paid, and on penalties and attorney fees from the date of judicial demand until paid. Kirn v. East Jefferson Hospital, 96-0838, p. 12 (La.App. 1 Cir. 2/14/97), 691 So.2d 127, 134; Thibodeaux v. Aetna Casualty and Surety Company, 454 So.2d 1141, 1146 (La.App. 1 Cir.1984).
Therefore, in the instant case, Mr. Hundley is entitled to recover legal interest from August 1, 2001 on the difference between the amount of workers' compensation he received and the amount he should have received and on each due date thereafter on which the full amount of supplemental earnings benefits were not *552 remitted to Mr. Hundley, until paid. Mr. Hundley is further entitled to recover interest on the amount of attorney fees awarded from the date of judicial demand, October 17, 2001, until paid.

CONCLUSION
For the reasons assigned herein the judgment of the OWC is reversed, and judgment is hereby rendered in favor of the claimant, Richard Hundley, against defendants/appellees, Bisso Properties and Louisiana Workers' Compensation Corporation, ordering defendants/appellees to reinstate Mr. Hundley's workers' compensation benefits to the full amount of supplemental earnings benefits, retroactive to August 1, 2001, and ordering defendant/appellees to pay to Richard Hundley all unpaid benefits with legal interest on the amounts owed from the date due until paid. Judgment is further rendered in favor of Richard Hundley for attorney fees in the amount of $3,500.00, with legal interest thereon from October 17, 2001 until paid. All costs of these proceedings are to be borne by defendants/appellees, Bisso Properties and Louisiana Workers' Compensation Corporation.
REVERSED AND RENDERED.
NOTES
[1] Hon. William F. Kline Jr., retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Prior to the reduction, claimant had received $1,328.53 per month in benefits. This amount was reduced to $872.43 per month.
[3] We note the argument that WE is a "sham" employer has previously been asserted, but there has been no prior direct ruling by the courts on this issue. See Doucet v. Crowley Mfg., XXXX-XXXX (La.App. 3 Cir. 3/19/03), 846 So.2d 875. Although in Kaiser v. Western-Southern Ins. Co., XXXX-XXXX (La.App. 5 Cir. 5/15/02), 821 So.2d 52, a WE position was noted as being among four positions that were available to the claimant justifying a reduction in supplemental earnings benefits, the validity of the WE position was not an issue before the court and was not discussed therein.
[4] No WE representative testified either personally, by affidavit, or by deposition. Although the November 2001 letter was in evidence, it was written three months after Mr. Hundley's benefits had been reduced and the offer of a job expressed therein expired before the letter reached its addressee. No similar copy of the job offer letter that was supposedly mailed to Mr. Hundley at the end of July 2001 was submitted into evidence.
[5] Supplemental earnings benefits are calculated as sixty-six and two-thirds percent of the difference between the average monthly wages at the time of injury and the average monthly wages the employee is able to earn in any month thereafter pursuant to LSA-R.S. 23:1221(3). Where the employer fails to prove that the employee was offered a job or one was available to him that he was physically capable of performing, the amount of wages the employee is able to earn is considered as zero. Spencer v. Gaylord Container Corp., 96-1230, p. 8 (La.App. 1Cir. 3/27/97). 693 So.2d 818, 824.
[6] LSA-R.S. 23:1201.2 provides:

Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter.