885 So.2d 1241 (2004)
Roger D. CRAIG
v.
BANTEK WEST, INC.
No. 2004 CA 0229.
Court of Appeal of Louisiana, First Circuit.
September 17, 2004.
*1242 William R. Mustian, III, Metairie, for Plaintiff-Appellant Roger D. Craig.
John J. Rabalais, Robert T. Lorio, Covington, for Defendant-Appellee Bantek West, Inc.
Before: CARTER, C.J., PETTIGREW, and McDONALD, JJ.
PETTIGREW, J.
In this workers' compensation case, the claimant appeals from a judgment granting his employer's motion for summary judgment and dismissing, with prejudice, a claim for penalties and attorney fees filed by the claimant as a result of a February 2003 termination of benefits. For the reasons that follow, we affirm.

FACTS AND PROCEDURAL HISTORY
The claimant, Roger D. Craig, injured his left shoulder on December 14, 1999, while working for Bantek West, Inc. ("Bantek") as an armored car guard and ATM technician. According to the record, Mr. Craig's injury occurred while he was "lifting a tote bag of money/coins when [the] handle (plastic) broke [and he] jerked [his] arm trying to catch [the] tote." Mr. Craig subsequently underwent shoulder surgery, followed by physical therapy and orthopedic treatment. Mr. Craig was unable to return to work until September 24, 2000, at which time he began working as a surveillance investigator with a different employer.
On April 17, 2003, Mr. Craig filed a disputed claim for compensation against Bantek, alleging that he was entitled to multiple penalties for Bantek's violations of workers' compensation laws. Mr. Craig asserted that although he had received workers' compensation benefits from Bantek, the "benefits were paid late and/or stopped at various times." In response to Mr. Craig's claim, Bantek filed an exception raising the objection of prescription. Therein, Bantek argued that Mr. Craig's demands for penalties and attorney fees for alleged conduct that occurred more than one year prior to the filing of his action would be prescribed as a matter of law. Bantek maintained that Mr. Craig's "fault-based claims would be subject to the suppletive prescriptive period of Article 3492 of the Louisiana Civil Code, providing that delictual actions are subject to a liberative prescription of one year."
The matter proceeded to hearing on July 18, 2003, at which time the workers' compensation judge heard argument from counsel for both sides. At the conclusion of the hearing, the judge instructed counsel for both sides that a timeline of events *1243 was necessary in order to reach a decision on the exception. Thereafter, the parties submitted supplemental memoranda outlining their respective arguments. Mr. Craig provided the following details of his various claims for penalties and attorney fees:
December 14, 1999 Date of Injury
On December 14, 1999 Roger Craig was involved in accident arising out of and in the course and scope of his employment. Despite the clear and substantial evidence regarding a work related injury, his claim for compensation was originally denied. This error was later recognized and Mr. Craig's benefits were instated, albeit untimely.
September 24, 2000 Return to Work
As a result of his injury, Mr. Craig came under the medical care of Dr. Ralph Katz and Dr. Chris J. Digrado. As a result of Mr. Craig's injuries to his shoulder he was unable to return to work until September 24, 2000. Although Mr. Craig did return to work on September 24, 2000 he was unable to return to his previous occupation due [to] medically imposed work restrictions.
April 6, 2001 Acknowledgement of Mr. Craig's Entitlement to SEB Benefits
Despite the clear evidence establishing Mr. Craig's inability to earn 90% of his pre-accident average weekly wage, his employer did not properly investigate the issue of [Supplemental] Earning Benefits until April 6, 2001, seven (7) months after [he] returned to work.... On April 6, 2001 it was finally acknowledged that Mr. Craig was entitled to SEB benefits. However, all past due compensation was not paid, instead Mr. Craig received payments in installments, in violation of the Act.
February 6, 2003, termination of Mr. Craig's SEB Benefits
On February 6, 2003, and without any reasonable justification, Employer terminated Mr. Craig's SEB benefits.... Employer alleges that they were justified based on a medical report from Dr. Katz dated 12/1/00 but clearly this is not a valid justification as Employer waited 35 months after the issuing of this report to terminate his benefits. Once again and realizing their mistake Mr. Craig's SEB benefits were reinstated. As a result of Employer's numerous violations of Louisiana's Workers' Compensation Act, Mr. Craig filed a disputed claim for compensation based on his Employer's arbitrary and capricious actions in this matter.
In a judgment rendered on July 24, 2003, the workers' compensation judge granted Bantek's exception raising the objection of prescription as to the claims for penalties and attorney fees due to alleged misconduct on December 14, 1999; September 24, 2000; and April 6, 2001.[1] With regard to the claim for penalties and attorney fees due to alleged misconduct on February 6, 2003, Bantek's exception was denied.
Bantek subsequently filed a motion for summary judgment as to the alleged improper February 6, 2003 termination of Mr. Craig's supplemental earnings benefits ("SEB benefits"). Bantek argued that its action in terminating Mr. Craig's SEB benefits was based on written confirmation from Mr. Craig's treating physician that Mr. Craig was at maximum medical improvement and "may return to full duty." Thus, Bantek maintained, it was in no way arbitrary and capricious in terminating Mr. Craig's SEB benefits. Moreover, *1244 Bantek noted that once Mr. Craig's physician withdrew this opinion, Mr. Craig's SEB benefits were immediately reinstituted, including payment for the prior suspended period. In support of its motion for summary judgment, Bantek submitted the August 25, 2003 affidavit of Shawn Jemison, a claims examiner employed by ESIS, Inc. (the third-party administrator for this claim) who was assigned to adjust Mr. Craig's workers' compensation claim. Attached to Ms. Jemison's affidavit were copies of pertinent medical records and various letters, all of which were used by Ms. Jemison in her decision to terminate Mr. Craig's benefits.
Mr. Craig filed a memorandum in opposition to Bantek's motion for summary judgment. Mr. Craig alleged that Bantek's motion for summary judgment was based on the "self-serving affidavit of the adjuster, Shawn Jemison," who "rushed to terminate [his] benefits with minimal information and an unclear idea of [his] exact medical condition." Thus, Mr. Craig argued, summary judgment was not appropriate. In support of his position, Mr. Craig introduced the deposition of Shawn Jemison, taken on September 18, 2003.
On September 29, 2003, the workers' compensation judge heard arguments on the motion for summary judgment. After considering the applicable law and the evidence in the record, the judge granted Bantek's motion for summary judgment, dismissing, with prejudice, Mr. Craig's claim for penalties and attorney fees as a result of the February 2003 termination of his SEB benefits. A judgment in accordance with these findings was signed on October 3, 2003. It is from this judgment that Mr. Craig has appealed.

SUMMARY JUDGMENT
A motion for summary judgment is a procedural device used to avoid a full-scale trial when there is no genuine issue of material fact. Western Sizzlin Steakhouse v. McDuffie, XXXX-XXXX, p. 3 (La.App. 1 Cir. 3/28/03), 844 So.2d 355, 357, writ denied, XXXX-XXXX (La.6/20/03), 847 So.2d 1236. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La.Code Civ. P. art. 966(A)(2). The motion should be granted only if the pleadings, depositions, answers to Interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover's burden on the motion does not require that all essential elements of the adverse party's claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2); Robles v. Exxonmobile, XXXX-XXXX, p. 4 (La.App. 1 Cir. 3/28/03), 844 So.2d 339, 341.
When appropriate under Articles 966 and 967, summary judgment is available in workers' compensation cases. See La.Code Civ. P. art. 966(A)(2); La. R.S. 23:1317(A); Sept v. City of Baker, 98-1190, p. 6 (La.App. 1 Cir. 5/18/99), 733 So.2d 748, 751, abrogated on other grounds; Dufrene *1245 v. Video Co-Op, Louisiana Workers' Compensation Corp., XXXX-XXXX (La.4/9/03), 843 So.2d 1066. In determining whether summary judgment is appropriate, appellate courts review evidence de novo under the same criteria that govern the trial court's determination of whether summary judgment is appropriate. Allen v. State ex rel. Ernest N. Morial New Orleans Exhibition Hall Authority, XXXX-XXXX, p. 5 (La.4/9/03), 842 So.2d 373, 377. An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover is entitled to judgment as a matter of law. Ernest v. Petroleum Service Corp., 2002-2482, p. 3 (La.App. 1 Cir. 11/19/03), 868 So.2d 96, 97, writ denied, XXXX-XXXX (La.2/20/04), 866 So.2d 830. Review of summary judgments in workers' compensation cases is conducted in the same manner. Davis v. AMS Tube Corporation, XXXX-XXXX, p. 4 (La.App. 1 Cir. 6/22/01), 801 So.2d 466, 468, writ denied, 2001-2122 (La.11/2/01), 800 So.2d 877.
In Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, pp. 26-27 (La.7/5/94), 639 So.2d 730, 751, the Louisiana Supreme Court set forth the following parameters for determining whether an issue is genuine or a fact is material.
A "genuine issue" is a "triable issue." More precisely, "[a]n issue is genuine if reasonable persons could disagree. If on the state of the evidence, reasonable persons could reach only one conclusion, there is no need for a trial on that issue. Summary judgment is the means for disposing of such meretricious disputes." In determining whether an issue is "genuine," courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence. "Formal allegations without substance should be closely scrutinized to determine if they truly do reveal genuine issues of fact."
A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. "[F]acts are material if they potentially insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." Simply put, a "material" fact is one that would matter on the trial on the merits. Any doubt as to a dispute regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits. [Citations omitted.]
Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to this case. Foreman v. Danos and Curole Marine Contractors, Inc., 97-2038, p. 7 (La.App. 1 Cir. 9/25/98), 722 So.2d 1, 4, writ denied, 98-2703 (La.12/18/98), 734 So.2d 637. Thus, we now turn to a discussion of the applicable law.

PENALTIES AND ATTORNEY FEES
The statutes providing for penalties and attorney fees are penal in nature and must be strictly construed. Barber Bros. Contracting v. Young, XXXX-XXXX, p. 7 (La.App. 1 Cir. 2/23/04), 873 So.2d 677, 681, writ denied, XXXX-XXXX (La.5/7/04), 872 So.2d 1084. Penalties should be enforced only in those instances in which facts clearly negate good faith and just cause in connection with refusal of allowance of compensation. Hebert v. South Louisiana Contractors, Inc., 238 So.2d 756, 761 (La.App. 1 Cir.1970). The purpose of imposition of penalties and attorney fees is to discourage indifference and undesirable conduct by employers and insurers. Authement v. Wal-Mart, 2002-2434, pp. 11-12 (La.App. 1 Cir. 9/26/03), 857 So.2d 564, 574. A determination of *1246 whether a discontinuation of workers' compensation benefits is arbitrary, capricious or without probable cause usually depends on the facts existing and known at the time benefits are terminated. Russell v. Snelling Personnel, XXXX-XXXX, p. 6 (La.App. 1 Cir. 5/9/03), 849 So.2d 588, 591. An employer must adequately investigate a workers' compensation claim. The crucial inquiry is whether the employer has articulable and objective reason for denying or discontinuing benefits at the time it took that action. Hundley v. Bisso Properties, 2002-2110, p. 9 (La.App. 1 Cir. 6/27/03), 858 So.2d 545, 551. The court must consider whether there was a "reasonable" basis for a dispute as to the employee's entitlement to benefits. Goodman v. Manno Electric, Inc., 2001-2863, p. 5 (La.App. 1 Cir. 11/8/02), 835 So.2d 697, 701.
After considering the evidence and the applicable law, the workers' compensation judge granted Bantek's motion for summary judgment, noting as follows:
Okay. I've read through the adjuster's deposition; I've read through the exhibits attached to the motion for summary judgment. I'm going to go ahead and grant the motion for summary judgment based on the fact that the standard for interpreting whether the discontinuance was arbitrary and capricious is basically was there anything in front of the adjuster or in front of the person making the decision at the time the benefits were terminated.
To me, the arbitrary and capricious standard, it's something in the nature of just on a whim. In my opinion, reading through the chronology and looking at the notation that Dr. Katz made, it's evident to me at least that he had to have made the notation on it at some point after May 2001. And it was, in my opinion, in response to the letter of Mr. Lorio's office. But in any event, Dr. Katz knew at the time that he was being asked of the clarification to begin with that Mr. Craig was doing surveillance work. In other words, it wasn't a situation where he had no idea that Mr. Craig was back at work whether it was the same job or whether it was a different job and what his activities were.
When the benefits were stopped, in my opinion, I find that there was something in the file which, you know, would clearly negate a finding of arbitrary and capricious. Like I said, to me the standard for that is something in the nature of just on a whim without any evidence at all in the file.
The othernot that it's relevant to the inquiry today because I have to look at what was known at the time the benefits were discontinued, but I do note that there was another clarification in March 2003. I think it was March 6th, 2003, from Dr. Katz and a check was issued March 13, 2003. But in any event, just for our purposes today, I'm finding thatwell, I'm going to grant the motion for summary judgment. I find that there was something in the file in the nature of a return to work to full duty that was a basis for discontinuance.
On appeal, Mr. Craig argues that not only were there genuine issues of material fact remaining that precluded summary judgment, but that the workers' compensation judge erred in applying an incorrect legal standard in determining whether Bantek's behavior was arbitrary and capricious.[2] Following our review of the record *1247 before us, we find no merit to Mr. Craig's arguments on appeal.
The record in the instant case reveals that the termination of Mr. Craig's SEB benefits in February 2003 was in no way arbitrary or capricious. On December 27, 2002, counsel for Bantek sent a letter to Mr. Craig's treating physician, Dr. Ralph P. Katz, requesting his opinion as to Mr. Craig's medical status. Dr. Katz was advised, "The purpose of this correspondence is to request confirmation from you as to whether the above referenced claimant, Roger Craig, has reached maximum medical improvement and is capable of a full return to his former employment as an armored personnel worker and ATM technician." In response to this request, Dr. Katz issued a written response to counsel for Bantek enclosing a copy of his May 2, 2001 medical report regarding Mr. Craig. Included on the bottom of the May 2, 2001 report was a handwritten notation indicating that Mr. Craig had reached maximum medical improvement on December 1, 2000, and "may return to full duty." The handwritten notation was followed by the initials "RPK." According to the affidavit and deposition testimony of Shawn Jemison, this release to full duty by Dr. Katz provided the basis for her decision to terminate Mr. Craig's SEB benefits. When asked if she knew when the handwritten note was made on the May 2, 2001 report, Ms. Jemison responded, "I don't know the specific date, but [counsel for Bantek] sends a letter to Dr. Katz in December. In January we get a response. That's my interpretation of this."
Ms. Jemison indicated further that after Mr. Craig's SEB benefits were stopped in February 2003, Bantek received correspondence from Dr. Katz clarifying his position on Mr. Craig's status. According to Dr. Katz, when he reported that Mr. Craig could return to full duty, it was his understanding that Mr. Craig was doing surveillance work. Dr. Katz indicated that had he known that Mr. Craig was "doing anything more than that," he would have put restrictions on him. In subsequent correspondence dated March 6, 2003, Dr. Katz clarified his position, i.e., Mr. Craig was not capable of returning to his former employment as an armored personnel worker and ATM technician without restrictions. Thereafter, Mr. Craig's SEB benefits were immediately reinstituted.
We have thoroughly reviewed the record herein and cannot say that Bantek acted with indifference in terminating Mr. Craig's SEB benefits in February 2003. Based on the information known to Bantek concerning Mr. Craig's medical status, Bantek had an articulable and objective reason for terminating Mr. Craig's benefits. Bantek initiated an investigation into Mr. Craig's medical status and requested the opinion of his treating physician concerning Mr. Craig's ability to return to full duty. It was only after Bantek was advised by Dr. Katz that Mr. Craig had reached maximum medical improvement and could return to full duty work that *1248 Bantek decided to terminate his benefits. This evidence provided Bantek with a reasonable basis for disputing Mr. Craig's entitlement to any further SEB benefits. Given the facts and circumstances herein, Bantek did not act in an arbitrary or capricious manner by terminating Mr. Craig's SEB benefits. There were no genuine issues of material fact remaining. Thus, summary judgment on this issue was appropriate.
With regard to Mr. Craig's argument that the workers' compensation judge erred in applying an incorrect legal standard in this case, we find no merit to same. As previously indicated, this court's review of a summary judgment is de novo and requires a determination of whether there are any unresolved genuine issues of material fact. We have thoroughly reviewed the record herein and find that Mr. Craig failed to bear his burden of producing evidence that there were genuine issues of material fact remaining as to his claim that Bantek acted arbitrarily and capriciously in terminating his benefits. Thus, even assuming arguendo that the judge below had utilized an incorrect legal standard, an issue that we need not reach at this time, our decision in this case would remain the same.

CONCLUSION
For the above and foregoing reasons, we affirm the judgment of the workers' compensation judge. All costs associated with this appeal are assessed against Roger D. Craig.
AFFIRMED.
NOTES
[1] The July 24, 2003 judgment is the subject of a separate appeal to this court, Docket No. 2003 CA 2757, also decided this date.
[2] Mr. Craig also assigns error to the judgment on the grounds that Bantek failed to offer any exhibits into evidence during the hearing on the summary judgment motion and therefore did not make the requisite showing necessary to sustain the judge's granting of summary judgment. We note no objection to this alleged deficiency by Mr. Craig at the time of the hearing. Our review of the record reveals that contemporaneous with filing its motion for summary judgment, Bantek also filed exhibits in support of its motion. Moreover, it is clear from the judge's comments following the hearing that all of the parties' exhibits were considered in connection with her ruling. Pursuant to La.Code Civ. P. art. 852, among the express types of permissible pleadings are "written motions." A copy of any written instrument that is an exhibit to a pleading is a part thereof for all purposes. La.Code Civ. P. art. 853. Under La.Code Civ. P. art. 966(B), the judgment sought shall be rendered forthwith if, inter alia, the pleadings on file show that there is no genuine issue of fact. Accordingly, we find no merit to Mr. Craig's argument concerning this issue. See Eirick v. Southern Elec. Supply Co., Inc. of Delaware, 97-0435, p. 5, n.4 (La.App. 1 Cir. 5/15/98), 753 So.2d 248, 251, n. 4, writ denied, 98-2197 (La.11/13/98), 731 So.2d 260.